## OGDEN CITY *v.* ARMSTRONG.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 127.   Argued November 11, 1897. — Decided November 29, 1897.

An examination of the record discloses that none of the complainants, save one, was assessed with a sufficient amount of taxes, to enable him to bring the case here on appeal, and accordingly, under the doctrine of *Russell* v. *Stansell*, 105 U. S. 303, and *Gibson* v. *Shufeldt*, 122 U. S. 27, the appeal is dismissed as to such parties.

No jurisdiction vested in the appellant's city council to make an assessment and levy a tax for the improvements which are the subject of this controversy until the assent of the requisite proportion of the owners of the property to be affected had been obtained, and the action of the city council in regard to that question was not conclusive.

In order to justify a court of equity in restraining the collection of a tax, circumstances must exist bringing the case under some recognized head of equity jurisdiction; and this case seems plainly to be one of equitable jurisdiction, within that doctrine.

When the illegality or fatal defect in a tax does not appear on the face of the record, courts of equity regard the case as coming within their jurisdiction.

When the authorities have jurisdiction to act, the statutory remedy is the taxpayer's exclusive remedy; but when the statute leaves open to judicial inquiry all questions of a jurisdictional character, a determination of such questions by an administrative board does not preclude parties aggrieved from resorting to judicial remedies.

THE original bill in this case was filed in May, 1892, in the Fourth Judicial District Court of the late Territory of Utah, against Ogden City, a municipal corporation, and its mayor and the members of its common council; and it was thereby sought to restrain the city and its officers from levying assessments upon the real estate of the plaintiffs and others simi-

larly situated, for the purpose of paving a portion of one of the streets of the city.

To this bill a demurrer was filed, which was sustained by the District Court, and a judgment was entered dismissing the bill. On appeal to the Supreme Court of the Territory that judgment was reversed, and the cause remanded to the court below. An answer to the bill was then filed, denying substantially the equities of the bill. Subsequently, on April 9, 1894, a supplemental bill was filed, bringing in additional parties complainant, and alleging that since the filing of the original bill the defendants had passed the ordinance assessing the properties of the plaintiffs, and were about to expose to sale the real estate described in the original and supplemental bills to satisfy the assessments, and threatened to continue to sell said real estate annually for ten years as each instalment of said assessment became due, whereby the plaintiffs had been compelled to pay certain amounts, stated in detail, in order to prevent a sale of their property, and to prevent a cloud upon their titles; and that certain real estate belonging to some of the plaintiffs had been sold by the city to satisfy the illegal assessments. The prayers were for a decree declaring the ordinance and assessments to be void restraining the defendants from proceeding thereunder; that an account be ordered of the amounts paid by plaintiffs under protest; that plaintiffs have judgment for the same; that the sales of real estate be set aside, and for general relief. An answer was filed to the supplemental bill denying specifically all of its allegations, but admitting that the ordinance in question was passed as alleged. It alleged affirmatively that the plaintiffs were estopped to complain as in the supplemental bill alleged; that the same did not state facts sufficient to constitute a supplemental complaint; that the cause of action was barred by the statute of limitations; that there was a misjoinder of parties plaintiff, and that there was a misjoinder of causes of action.

On the 27th day of October, 1894, findings were signed, and judgment entered, giving the plaintiffs the relief prayed for in both the original and the supplemental bill. The decree of

the court below was on appeal affirmed by the Supreme Court of the Territory, from whose decree an appeal was taken and allowed to this court.

The findings of fact were as follows :

1. That the plaintiffs were at the date of the filing of the complaint in this action residents and taxpayers in Ogden City, Weber County, Utah Territory, and brought this action concerning a matter of general interest to all taxpayers in said Ogden City on their own behalf and on the behalf of all others similarly situated.

2. That the defendants, except Ogden City, at the time of the bringing of this action were the mayor and members of the common council of said Ogden City, defendant.

3. That on the 7th day of March, 1892, proceedings were had by the common council of said Ogden City as follows :

" Finance committee recommending immediate creation of three paving districts as follows : District No. 2, Twenty-fifth street from the west line of Washington avenue to the west line of Wall avenue.

" Councillor Dee moved to lay on the table for one week. Motion lost.

" Councillor McManis moved to adopt the motion. Carried."

4. That the above were the only proceedings had by said council of Ogden City in regard to the creation of said paving district prior to the publication of the notice hereinbelow mentioned; and upon the same day the following proceedings were had :

" Councillor Spencer moved the following motion, in pursuance of the proceedings already taken in ordering the creation of three paving districts : ' I move that the council adopt the accompanying notice of intention, and that the same be published for twenty days, beginning with to-morrow morning, Tuesday, March 8th.' Said notice was read and Councillor Dee moved to lay on the table for one week. Motion lost, Dee and Elliott voting ' aye ; ' Calvert, Cannon, Graves, McManis, Shurtliff and Spencer voting ' nay.' The original motion was then put and carried, Calvert, Cannon, Graves, McManis, Shurtliff and Spencer voting ' aye,' and Dee and Elliott voting ' nay.' "

5. That thereupon, on March 9th, 1892, in the Ogden Daily Standard the following notice of intention mentioned above was published, to wit:

"Notice of intention of the city council of Ogden City of creating a district for paving and of paving and macadamizing the streets therein and to defray the expenses of such improvement by local assessment.

"The city council of Ogden City, situate in the county of Weber, Territory of Utah, gives notice that it intends to make the following improvements, to wit, pave and macadamize the following streets: Twenty-fifth street from the west line of Washington avenue to the west line of Wall avenue. This district shall be known as paving district No. 2. The boundaries of the district to be affected and benefited are the lines running one hundred and fifty feet back and parallel with the outer lines of each side of the streets on each and every block and for the full length thereof therein. The estimated cost of such improvement is $40,000. For the payment of the costs and expenses thereof the city council intends to levy local taxes upon the real estate lying and being within said paving district and to the extent of the benefits to such property by reason of such improvement. The city council will, on March 29, 1892, at 10 A. M., hear objections in writing and from any and all persons interested in said local assessment. By order of the city council:

"T. P. BRYAN, *City Recorder.*"

6. That on March 29, 1892, at 9.55 o'clock, D. H. Peery and sixty-eight others, including all the plaintiffs in this action and in the supplemental complaint, who were then the owners of real property within the said paving district No. 2 and with frontage on Twenty-fifth street within the said paving district, filed a protest with the said recorder of said Ogden City, protesting against the levying of any local assessment against or upon their property for the purpose of paving said street within said district; that said persons so protesting owned and protested for more than one half of the whole

frontage on said Twenty-fifth street within said district, to wit, 2414 feet; that after said hour of 10 A.M. of said day certain persons who had protested to the amount of 302¼ feet withdrew their protests, leaving at all times 2111¾ feet frontage on said Twenty-fifth street in said district still protesting against the said local assessment; that the total number of feet fronting on said Twenty-fifth street in said paving district, as mentioned in said notice of intention above set forth, was 3960, of which 660 feet belonged at said time and still belong to said Ogden City and were then and are now used for public purposes by the said city, and 125 feet of said frontage were then and are now the property of the said Ogden City, and was public school property, used and owned for public schools.

7. That notwithstanding said protest of said abutting property owned on said Twenty-fifth street in said paving district No. 2, and without giving any other or further notice except as hereinbefore stated, the said city council, on the 4th day of April, 1892, passed the following resolution, to wit:

"*Resolved,* That the city proceed as speedily as possible to the paving of Twenty-fifth street district with Utah sandstone blocks; that the city engineer be instructed to prepare the necessary specifications at once and submit the same at the next meeting of the council; that the competition of said work be restricted to *bona fide* residents of Ogden, and that so far as it is possible only Ogden labor be employed in the performance of the work."

8. That on May 2, 1893, said city council of Ogden City passed a resolution instructing the city recorder to advertise for bids for the paving of Twenty-fifth street in said district; which notice was as follows:

" To paving contractors: Bids will be received by the city recorder of Ogden City until 12 o'clock M. May 23, 1892, for the paving of Twenty-fifth street, in Ogden City, from Washington to Wall avenue, according to the specifications of the city engineer of Ogden City, on file in the city recorder's office. Competition is restricted to *bona fide* residents of Ogden City. The city reserves the right to reject any and all bids. Specifications will be furnished on application to the city recorder."

9. That no specifications had been made by the city prior to this time, but afterwards new specifications were made and filed providing for the paving, grading, and curbing of said Twenty-fifth street, and were adopted by the city council; which specifications provided for the paving of said street with asphaltum and the sides of the street with sandstone blocks and curbing the street, and the contract which was awarded for the doing of said work provided that the contractor should keep the said street in repair for two years after the work upon the same was finished.

10. That the plaintiffs in this action were at the date of the filing of the complaint herein, to wit, May 21, 1892, the owners of the real property mentioned in the complaint, but upon the trial of this action it appeared that John Broom and William Chapman were deceased; Samuel Chapman, administrator of the estate of William Chapman, and Hester Broom, administratrix of the estate of John Broom, were substituted as plaintiffs, and said other parties were still the owners of the property mentioned as belonging to them in the complaint in this action.

11. That said plaintiffs had upon filing their complaint obtained a temporary injunction against the said defendants, but afterwards a demurrer to said complaint was sustained by the said court and said complaint ordered dismissed; which ruling was afterwards by the Supreme Court of the Territory of Utah reversed, and the said cause was ordered remanded, with directions to the defendant to answer said complaint.

12. That the said council, in spite of the protest hereinbefore mentioned, proceeded and at the time of the filing of the complaint in this action had upon its passage the ordinance attached as Exhibit B to the complaint in this action, and afterwards, on the 22d day of March, 1893, passed the ordinance which is hereto attached and marked Exhibit A and made a part of these findings.

13. That on the 9th day of April, 1894, the plaintiffs filed a supplemental complaint in this action and asked that Mathias Biel, Joseph Clark, George W. Lashus, Lamoni Grix, Carl Sorenson, J. E. Horrocks and Ann Horrocks, J. S. Lewis,

Lindsey R. Rogers, Patrick Healey, Joseph Morely, Zilpha J. Stephens, W. C. Warren, Almira C. Baker, D. H. Stephens, Mary A. Stephens, Elizabeth Stephens and The Ogden Union Depot and Railway Company, a corporation, be made parties to this action; which supplemental complaint was ordered by the court to be filed; that at the time of the filing of the supplemental complaint the said parties (except The Ogden Depot and Railway Company, a corporation) were and still are the owners of real estate fronting on said Twenty-fifth street (and said plaintiff last named was the owner of real estate assessed with said special tax, but not included in said paving district) included in said paving district, and upon the trial of this action D. H. Peery, Jr., and The Realty Company of Kittery, Maine, a corporation, and J. Pingree and Zilpha J. Stephens, Carrie Lewis and George W. Murphy were added as parties plaintiff, and were at the date and still are the owners of real estate in said district fronting on said Twenty-fifth street, the pleadings having been allowed to be amended by the court in accordance with such facts.

14. That said Ogden City, in pursuance of said ordinance of March 22, 1893, was about to expose the real estate described in the original and supplemental complaints to sale to satisfy the illegal assessment imposed by said ordinance, and that the parties plaintiff in this action, after their said property had been advertised for sale and was about to be sold to satisfy the said illegal assessment then due, paid under protest to said Ogden City, in order to prevent the sale of their property, the following amounts, to wit, J. C. Armstrong, $95.04; Mathias Biel, $63; Joseph Clark, $48; Samuel Chapman, for the William Chapman estate, $49.20; Joseph Clark, for Clark, Emmet and Thompson, $30; William Driver, $60; H. I. Griffin, $23.76; Lamoni Grix, $24.90; Ann Horrocks and James E. Horrocks, $124.80; Geo. W. Lashus, $60; H. D. and J. S. Lewis, $82.09; Carrie Lewis, $30; Joseph Morely, $36; Patrick Healey, for Patterson and Healey, $30; Joseph Clark, for Patterson and Clark, $60; L. R. Rogers, $74.04; J. H. Spargo, $48; D. M. Stephens, $14.70; Carl S. Sorenson, $20.40; W. C. Warren, $48;

Geo. M. Kerr, guardian of the Nichols heirs, $160.08; D. H. Peery, Jr., $24; Realty Company of Kittery, Maine, $748.80; Job Pingree, $35.40; Ogden Union Depot and Railway Company, a corporation, $118.80; Geo. W. Murphy, $154.20.

15. That said plaintiffs are without any speedy and adequate remedy at law for the recovery of said amounts without a great multiplicity of suits, and said assessment constitutes a cloud upon the title of the various plaintiffs to their several parcels of realty, and that said city asserts that it will annually for nine years hereafter levy assessments upon said real estate for the payment of said paving and collect the same from the said parties plaintiff, and has already caused to be sold the property of certain of the plaintiffs under and by virtue of said assessment.

16. That the number of feet frontage in said paving district was 3300, as the same is described in the ordinance, Ex. A; that the difference between the district described in the ordinance and the district described in the notice of intention consisted of 660 feet of the public property of the said Ogden City, and the lots affected by the said assessment and described in said ordinance varied in depth, some being 75 feet deep and others 150 feet deep, and that the property owned by the various parties plaintiff in this action varied greatly in depth; that no ascertainment of actual benefits to the property assessed was ever made in order to determine the amount of assessment or to determine whether the amount assessed exceeded the actual benefits to the property by reason of the improvement, but the cost of the improvement was assessed upon the property abutting and fronting upon Twenty-fifth street within the said paving district at an arbitrary rate of $12 per front foot without any finding or attempt to find the amount of actual benefits to the property; that the said improvement was made without any general plan and form of public improvement having been adopted by the said Ogden City, and the actual benefits to the property assessed for said improvement were not equal and uniform, nor was said assessment equal and uniform.

*Mr. R. H. Whipple* for appellant.    *Mr. T. D. Johnson* was on his brief.

*Mr. E. M. Allison, Jr.,* for appellees.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

The first question to be determined is whether the amount in controversy is sufficient to give us jurisdiction of the appeal.

Although no motion was made to dismiss the appeal, it was suggested at the argument that, as it was not competent to make up the sum necessary to give this court jurisdiction by uniting the several sums for which each taxpayer was liable, this was such a case, and that therefore we should dismiss the appeal.

Undoubtedly, it is the well-settled rule of this court that, in a suit in equity brought in the Circuit Court by two or more persons on several and distinct demands, the defendant can appeal to this court as to those plaintiffs only to each of whom more than five thousand dollars is decreed.    *Russell* v. *Stansell,* 105 U. S. 303, was a case in its facts much like the present one.    There land within a particular district was assessed for taxation, each owner being liable only for the amount wherewith he was separately charged; a bill of complaint was filed by a number of them, praying for an injunction against the collection of the assessment, and from a decree dismissing the bill an appeal was taken to this court. It was held that, while the complainants were permitted, for convenience and to save expense, to unite in a petition setting forth the grievances of which complaint was made, the object was to relieve each separate owner from the amount for which he personally, or his property, was found to be accountable, and that such distinct and separate interests could not be united for the purpose of making up the amount necessary to give this court jurisdiction on appeal.

The same conclusion was reached in *Gibson* v. *Shufeldt,* 122 U. S. 27, where the previous cases were fully discussed.

An examination of this record discloses that none of the complainants, save one, was assessed with an amount sufficient to have enabled him to bring the case here on appeal, and accordingly, under the doctrine of the cases cited, this appeal must be dismissed as to such parties.

But it appears that the Realty Company of Kittery, a corporation of the State of Maine, a party complainant in the supplemental bill, had been assessed, under the ordinance complained of, for the sum of $748.80, as an instalment for one year, and had been compelled to pay the same, and that the city was threatening to continue said proceedings and to sell the real estate of said company annually for nine years as each instalment for a like sum became due. The liability of that company then, under the ordinance and assessment complained of, amounted to the sum of $7488, and as that company could, had the decree of the court below been adverse to it, have brought the case here on appeal, so, upon the authorities above referred to, it is competent for the defendant city to do the same.

Upon the merits, the first and most important question to consider is whether the city council had jurisdiction to assess and collect the paving tax.

The proceedings were initiated and the tax sought to be levied and collected under the provisions of chapter 41 of the Session Laws of 1890 of the late Territory of Utah. The thirteenth section thereof reads as follows:

"In all cases before the levy of any taxes for any improvements provided for in this act the city council shall give notice of intention to levy said taxes, naming the purposes for which the taxes are to be levied, which notice shall be published at least twenty days in a newspaper published within said city. Such notice shall describe the improvements so proposed, the boundaries of the district to be affected or benefited by such improvements; the estimated cost of such improvements, and designate the time set for such hearing. If at or before the time so fixed written objections to such improvements signed by the owners of one-half of the front feet abutting upon that portion of the street, avenue or alley

to be so improved be not filed with the recorder, the council
shall be deemed to have acquired jurisdiction to order the
making of such improvements."

The bill alleged, the answer admitted, and the trial court
found that the notice of intention to pave in district No. 2,
and to defray the expenses thereof by levying a local tax on
abutting property owners, was published on March 9, 1892,
and in which it was stated that the city council would on
March 29, 1892, at 10 o'clock A. M., hear objections in writing
from any and all persons interested in said local assessment.

The sixth finding of the trial court was as follows:

"That on March 29th, 1892, at 9.55 o'clock, D. H. Peery and
sixty-eight others, including all the plaintiffs in this action
and in the supplemental complaint, who were then owners of
real property within the said paving district No. 2, and with
a frontage on Twenty-fifth street within the said paving dis-
trict, filed a protest with the said recorder of said Ogden City
protesting against the levying of any local assessment against
or upon their property for the purpose of paving said street
within said district; that said persons so protesting owned
and protested for more than one-half of the whole frontage
on said Twenty-fifth street within said district, to wit, 2414
feet; that after said hour of 10 A.M. of said day certain per-
sons who had protested to the amount of 302½ feet withdrew
their protests, leaving at all times 2111¾ feet frontage on said
Twenty-fifth street in said district still protesting against said
local assessment; that the total number of feet fronting on
said Twenty-fifth street in said paving district, as mentioned
in said notice of intention above set forth, was 3960 feet, of
which 660 feet belonged at said time and still belongs to said
Ogden City, and was then and is now used for public purposes
by said city, and 125 feet of said frontage was then and is
now the property of the said Ogden City, and was public
school property, used and owned for public schools."

It is contended on behalf of the appellant that the city
council, on April 4, 1892, determined that less than half of
the whole frontage had protested, and that, as the city council
was acting judicially in a proceeding duly inaugurated, such

action cannot be reviewed in an equitable action to restrain the collection of the tax, but should be reviewed, if at all, by certiorari, in which action the whole record would be removed to the District Court.

So far as this proposition involves questions of facts as to the proportion of frontage covered by the protests, we, of course, accept the finding, on that subject made by the trial court, and approved and adopted by the Supreme Court of the Territory. *Stringfellow* v. *Cain,* 99 U. S. 610; *Haws* v. *Victoria Copper Mining Co.,* 160 U. S. 303.

But the argument seems to be that when once that question of fact was determined by the city council, proceeding under the statute, their determination cannot afterwards be challenged in a collateral proceeding; that while it would not be conclusive in an action by certiorari to set aside the assessment, it is conclusive as against a proceeding by injunction to prevent the collection of the tax. It is said that the jurisdiction of the city council attached when by resolution or ordinance and publication it gave notice of its intention to make the improvement in question.

We agree with the courts below in thinking that no jurisdiction vested in the city council to make an assessment or to levy a tax for such an improvement, until and unless the assent of the requisite proportion of the owners of the property to be affected had been obtained, and that the action of the city council in finding the fact of such assent was not conclusive as against those who duly protested. The fact of consent, by the requisite number, in this case to be manifested by failure to object, is jurisdictional, and in the nature of a condition precedent to the exercise of the power.

"Where the power to pave or improve depends upon the assent or petition of a given number or proportion of the proprietors to be affected, this fact is jurisdictional, and the finding of the city authorities or council that the requisite number had assented or petitioned is not, in the absence of legislative provision to that effect, conclusive; the want of such assent makes the whole proceeding void." (Dillon's Municipal Corporations, vol. 2, sec. 800, 4th edition, where numerous cases

from the different States are cited in support of that proposition.)

In *Zeigler* v. *Hopkins*, 117 U. S. 683, a similar question was thus stated and decided:

"There is in reality but a single question presented for our consideration in this case, and that is whether, in an action of ejectment brought to recover the possession of lands sold for the nonpayment of taxes levied to defray the expenses of opening Montgomery Avenue generally, and not in obedience to an order of a court of competent jurisdiction to meet some particular liability which had been judicially established, the landowner is estopped from showing, by way of defence, that the petition for the opening presented to the mayor was not signed by the owners of the requisite amount of frontage; and this depends on whether the owner is concluded, (1), by the acceptance of the petition by the mayor and his certificate as to its sufficiency and the action of the board of public works thereunder; or, (2), by the judgment of the county court confirming the report of the board of public works.

"This precise question was most elaborately considered by the Supreme Court of California in *Mulligan* v. *Smith*, 59 California, 206, and decided in the negative, after full argument. With this conclusion we are entirely satisfied. It is supported by both reason and authority."

It is next contended on behalf of the appellant that if the city council wrongfully took jurisdiction, in face of the facts shown in or upon the face of its own proceedings, then the tax was absolutely void on its face, and the plaintiffs must seek their remedy at law; and further, if the city council wrongfully and falsely made its record to show facts sufficient to give it jurisdiction, when such facts never existed, then in order to get into equity plaintiffs must plead all such facts, and that even in such a case certiorari is, under the laws of Utah, a plain and perfect remedy.

It is doubtless true that the collection of a tax will not be restrained on the ground that it is irregular or erroneous. Errors in the assessment do not render the tax void; and usually there are legal remedies for all such mere irregulari-

ties and errors as do not go to the foundation of the tax, and parties complaining must be confined to these. As was held by this court in *Dows* v. *Chicago*, 11 Wall. 108: "A suit in equity will not lie to restrain the collection of a tax on the sole ground that it is illegal. There must exist in addition special circumstances, bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury, or, where the property is real estate, throw a cloud upon the title of the complainant."

But the present case would seem plainly to be one of equitable jurisdiction within the doctrine of that case. What is complained of is no mere irregularity or error in the assessment. As we have seen, there was an entire want of jurisdiction in the common council to proceed for want of the assent of the requisite proportion of property owners, and the assessment and tax were, therefore, void. That there was no plain and adequate remedy by certiorari would seem to be evident. Upon that writ nothing could have been shown by evidence of facts outside of the record. It is true that, in some of the States, provision is made by statute to bring such evidence in, but such is not shown to have been the case here. It is an admitted fact upon the face of the pleadings that the common council actually found that the necessary jurisdictional fact existed, and that such a finding was made a matter of record. The plaintiffs alleged in their bill and the defendants in their answer denied that the finding of the jurisdictional fact by the common council was an untrue finding. Such an issue required evidence *dehors* the record of the proceedings before the council in order to impeach their finding. The record of this case discloses that a large amount of oral evidence was introduced by the complainants, and admitted without objection by the defendants, to show ownership by the protesting parties, and to show that the common council were mistaken in finding that the requisite number had not protested.

Not only, however, was there a want of an adequate remedy in proceeding by a writ of certiorari, but, we think, equitable

jurisdiction was properly invoked to prevent a multiplicity of suits, and also to relieve the plaintiffs from a cloud upon their title.

The finding on this fact of the case was as follows:

"That said plaintiffs are without any speedy and adequate remedy at law for the recovery of said amounts without a great multiplicity of suits, and said assessment constitutes a cloud upon the title of the various plaintiffs to their several parcels of realty, and that said city asserts that it will annually for nine years hereafter lay assessments upon said real estate for the payment of said paving and collect the same from the said parties plaintiff, and has already caused to be sold the property of certain of the plaintiffs under and by virtue of said assessment."

If a tax is a lien upon lands, it may then constitute a cloud upon the title; and one branch of equity jurisdiction is the removal of apparent clouds upon the title, which may diminish the market value of the land, and possibly threaten a loss of it to the owner. It is doubtless true that it has been held by this and other courts that if the alleged tax has no semblance of legality, and if upon the face of the proceedings it is wholly unwarranted by law, or for any reason totally void, as disclosed by a mere inspection of the record, such a tax would not constitute a cloud, and that the jurisdiction which is exercised by courts of equity, to relieve parties by removing clouds upon their titles, would not attach.

But when the illegality or fatal defect does not appear on the face of the record, but must be shown by evidence *aliunde*, so that the record would make out a *prima facie* right in one who should become a purchaser, and the evidence to rebut this case may possibly be lost, or become unavailable from death of witnesses, or when the deed given on a sale of the lands for the tax would be presumptive evidence of a good title in the purchaser, so that the purchaser might rely upon the deed for a recovery of the lands until the irregularities were shown, courts of equity regard the case as coming within their jurisdiction, and have extended relief on the ground that a cloud on the title existed or was imminent.

*Dows* v. *Chicago*, 11 Wall. 198; *Hannewinkle* v. *Georgetown*, 15 Wall. 547.

Undoubtedly, for merely irregular assessments, where the authorities have jurisdiction to act, the statutory remedy is also the exclusive remedy. But when the statute, as in this case, leaves open to judicial inquiry all questions of a jurisdictional character, it is well settled that a determination of such questions by an administrative board does not preclude parties aggrieved from resorting to judicial remedies.

Thus in *Emery* v. *Bradford*, 29 California, 75, the Supreme Court of California, while holding that the remedy of an owner of a lot in San Francisco assessed for work on a street in front of the same, if dissatisfied with the decision of the superintendent of public streets, is an appeal from such decision to the board of public supervisors, and that, if the proceedings are such that the proper officers have jurisdiction to act, their determinations are valid and can only be reviewed in the mode provided by the statute, said: "That where there are acts to be performed of a jurisdictional character essential to the validity of the assessment, it is not to be supposed that the conclusiveness of the decision of the board of supervisors is to extend to that class of cases."

So in *Wright* v. *Boston*, 9 Cushing, 273, the Supreme Judicial Court of Massachusetts, in holding that objections to a tax for some defect or irregularity in making the assessment must be taken advantage of by appeal, stated the proposition thus: "For any defect or irregularity in the course of proceeding in making the assessment, any ground of objection, which does not go to show the whole proceedings a nullity, the owner must take his appeal, if he has one."

In *Union Pacific Railway* v. *Cheyenne*, 113 U. S. 516, 525, this court, through Mr. Justice Bradley, said:

"But it is contended that the complainant should have sought a remedy at law and not in equity. It cannot be denied that bills in equity to restrain the collection of taxes illegally imposed have frequently been sustained. But it is well settled that there ought to be some equitable ground for relief besides the mere illegality of the tax; for it must be

presumed that the law furnishes a remedy for illegal taxation. It often happens, however, that the case is such that the person illegally taxed would suffer irremediable damage, or be subjected to vexatious litigation, if he were compelled to resort to his legal remedy alone. For example, if the legal remedy consisted only of an action to recover back the money after it had been collected by distress and sale of the taxpayer's lands, the loss of his freehold by means of a tax sale would be a mischief hard to be remedied. Even the cloud cast upon his title by a tax under which a sale could be made would be a grievance which would entitle him to go into a court of equity for relief."

Numerous cases to the same effect may be found cited in Cooley on Taxation, 543.

Again, it is contended on behalf of the appellant, that the defendants cannot recover the taxes paid by them under protest because the Session Laws of Utah, 1890, sec. 1, p. 38, provide that "any party, feeling aggrieved by any such special tax or assessment or proceeding, may pay said special tax assessed or levied upon his property, or such instalments thereof as may be due, at any time before the same shall be delinquent, under protest, and with notice in writing to the city collector that he intends to sue to recover the same, which notice shall particularly state the alleged grievances and grounds thereof; whereupon such party shall have the right to bring a civil action within sixty days thereafter, and not later, to recover so much of the special tax as he shall show to be illegal, inequitable and unjust, the cost to follow the judgment, to be apportioned by the court as may seem proper, which remedy shall be exclusive."

As respects this contention we agree with the Supreme Court of the Territory, that this statute applies to cases where there are only errors, irregularities, overvaluations or other defects which are not jurisdictional, but that where the council, not having the jurisdiction to levy the tax, could not proceed under the statute, the taxpayers need not proceed under the statute to recover the money paid. Where the tax was wholly void and illegal, as in this case, the

statute and its remedies for errors and irregularities have no application.

> *Our conclusion is that the decree of the Supreme Court of the Territory of Utah, so far as it respects the Realty Company of Kittery, is affirmed, and that as to the other appellees the appeal is dismissed.*