**William M. SCHREIBER et al., Plaintiffs-Appellees,**

v.

**Richard G. LUGAR, as Mayor of the Consolidated City of Indianapolis, Indiana, et al., Defendants-Appellants.**

**Nos. 74–1998, 74–1999.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1975.

Decided July 14, 1975.

Duge Butler, Jr., Indianapolis, Ind., for William M. Schreiber.

Gary R. Landau, Corp. Counsel, Ronald E. Shannon, Asst. Corp. Counsel, Indianapolis, Ind., for Richard G. Lugar.

Before FAIRCHILD, Chief Judge, McALLISTER,* Senior Circuit Judge, and STEVENS, Circuit Judge.

STEVENS, Circuit Judge.

The questions presented are (1) whether in a taxpayers' action to enjoin the expenditure of $4.4 million for the construction of an indoor sports arena in Indianapolis, Indiana, "the matter in controversy exceeds the sum or value of $10,000" within the meaning of 28 U.S.C. § 1331(a);[1] and (2) whether the proposed expenditure abridges the rights of

---

* Senior Circuit Judge Thomas F. McAllister of the United States Court of Appeals for the Sixth Circuit is sitting by designation.

1. The statute provides:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

the citizens of Indianapolis to the Equal Protection of the Laws.

## I.

■ Plaintiffs-appellants are citizens and taxpayers of the consolidated City of Indianapolis, Marion County, Indiana.[2]

■ They allege that the construction of the stadium was not authorized by Indiana law and, accordingly, the use of federal revenue sharing funds would violate the Local Fiscal Assistance Act of 1972 (Revenue Sharing Act).[3] Their complaint is filed on behalf of all citizens and taxpayers of Indianapolis; jurisdiction of the statutory claim was predicated on 28 U.S.C. § 1331(a).[4] The district court assumed jurisdiction but dismissed the complaint for failure to state a claim upon which relief could be granted.

Although not raised by the parties, we are confronted at the outset with the necessity of determining the existence of federal jurisdiction, see Carson v. Allied News Co., 511 F.2d 22, 23 (7th Cir. 1975); for it is clear on the face of the record that "no single member of the class will stand to suffer in the amount of Ten Thousand ($10,000) Dollars." [5] In order to satisfy the statutory jurisdictional amount requirement, it is necessary to aggregate the claims of the members of the plaintiffs' class. Such aggregation, if permissible, would result in an alleged injury of either $4.4 million [6] or $440,000,[7] depending on how one analyzes the claim. In either event, the question is whether such aggregation is permissible in a taxpayers' suit.

That question has repeatedly been answered in the negative by the Supreme Court. In Russell v. Stansell, 105 U.S. 303, 26 L.Ed. 989, various landowners whose property was subject to assessment to pay a judgment owed Stansell by the Levee Board of Mississippi sought to enjoin the collection of the assessment. In dismissing the appeal from the dissolution of the injunction, the Court concluded:

While the appellants, and those whom they have been chosen to represent, are all interested in the question on which their liability to the appellee depends, they are separately charged with the several amounts assessed against them. There is no joint responsibility resting on them as a body.

105 U.S. at 304. Later cases involving attempts to enjoin the collection of assessments or taxes have followed Russell in holding that aggregation is not to be

2. Plaintiffs' standing as municipal taxpayers appears to be established by *Frothingham, v. Mellon,* 262 U.S. 447, 486–487, 43 S.Ct. 597, 67 L.Ed. 1078, and *Crampton v. Zabriskie,* 101 U.S. 601, 609, 25 L.Ed. 1070.

3. Pub.L.No.92–512, 86 Stat. 919, 31 U.S.C. §§ 1221–1263 (Supp. II 1972). Plaintiffs argue specifically that the sports stadium was not an "ordinary and necessary capital expenditures authorized by law" within the meaning of § 103(a)(2) of the Revenue Sharing Act, 31 U.S.C. § 1222(a)(2), because of defendants' employment of a construction manager without competitive bidding and other alleged state law irregularities.

4. Plaintiffs did not invoke 28 U.S.C. § 1337 as a basis for federal jurisdiction. Even under a liberal interpretation of that section, see *Murphy* v. *Colonial Federal Savings & Loan Association,* 388 F.2d 609, 614–615 (2d Cir. 1967), the Revenue Sharing Act would not appear to be an "act regulating commerce," inasmuch as the commerce clause did not provide a signifi-

cant, if indeed any, source of federal power to enact that statute. Presumably the statute rests on the so-called "spending power." *See Helvering* v. *Davis,* 301 U.S. 619, 640, 57 S.Ct. 904, 81 L.Ed. 1307.

5. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and Strike, at 1.

6. Presumably the unlawful expenditure of the revenue sharing funds would require a corresponding increase in taxation to provide the necessary funds for the lawful public services and capital expenditures for which the revenue sharing funds were intended.

7. Section 123(a)(3) of the Act, 31 U.S.C. § 1243(a)(3), provides that the Secretary of the Treasury may collect a 10% penalty, in addition to requiring the repayment of funds used in violation of the priority expenditures provision of the Act, § 103(a), 31 U.S.C. § 1222(a). No such penalty will be assessed, however, if the municipality promptly repays the improperly spent funds to its own local revenue sharing trust fund. 31 C.F.R. § 51.31(c) (1974).

permitted. *Ogden City* v. *Armstrong,* 168 U.S. 224, 232, 18 S.Ct. 98, 42 L.Ed. 444; *Wheless* v. *St. Louis,* 180 U.S. 379, 382, 21 S.Ct. 402, 45 L.Ed. 583; *Rogers* v. *Hennepin County,* 239 U.S. 621, 622, 36 S.Ct. 217, 60 L.Ed. 469; *Clark* v. *Paul Gray, Inc.,* 306 U.S. 583, 589, 59 S.Ct. 744, 83 L.Ed. 1001.[8] And, more recently, in *Snyder* v. *Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319, the Court held that the 1966 amendments to the Federal Rules of Civil Procedure did not modify the general rule that the separate claims of multiple plaintiffs cannot be aggregated to satisfy the jurisdictional amount requirement.[9]

There is an early case, *Brown* v. *Trousdale,* 138 U.S. 389, 11 S.Ct. 308, 34 L.Ed. 987, which, standing alone, would indicate that aggregation is permissible in certain taxpayer litigation. In that case, plaintiffs, taxpayers in Muhlenburg County, Kentucky, filed suit in the state court to enjoin county officials from collecting taxes to be used to pay the interest on bonds issued for an allegedly improper purpose, and also to enjoin the bondholders from collecting interest. Some of the bonds were held by Ken-

tucky citizens and others by citizens of Tennessee. Two defendant bondholders, citizens of Tennessee, removed the case to the United States Circuit Court for the District of Kentucky, asserting federal jurisdiction on the basis of diversity of citizenship. The circuit court accepted jurisdiction and dissolved the injunction which had been issued by the state court.

On appeal, the Supreme Court reversed, holding that federal jurisdiction was lacking because citizens of Kentucky were on both sides of the controversy. In reaching this result, the Court first stated that it was appropriate to treat the "grievance complained of" as "common to all the plaintiffs and to all whom they professed to represent." [10] This step in the Court's reasoning was, no doubt, a holding that the aggregation of the taxpayers' claims in that case was proper; it was, however, a holding that led to the same ultimate conclusion—namely an absence of federal jurisdiction—as would have been produced by a contrary ruling on the aggregation question. Possibly for that reason the *Brown* analysis of the aggregation question has

---

**8.** There was no discussion of the amount-in-controversy requirement in *Flast* v. *Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947. One commentator attributes this omission to the "excitement" over the standing issue in that case. D. Currie, "The Federal Courts and the American Law Institute (Part II)," 36 U.Chi.L. Rev. 268, 294 n. 379 (1969).

**9.** As the Supreme Court noted in *Snyder* v. *Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056:

"Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."

*Snyder* held that the 1966 amendments to Fed. R.Civ.P. 23 did not affect this limited exception to the general rule that "the separate and distinct claims of two or more plaintiffs cannot be aggregated . . . ." *Id.*

**10.** "The main question at issue was the validity of the bonds, and that involved the levy

and collection of taxes for a series of years to pay interest thereon and finally the principal thereof, and not the mere restraining of the tax for a single year. The grievance complained of was common to all the plaintiffs and to all whom they professed to represent. The relief sought could not be legally injurious to any of the taxpayers of the county, as such, and the interest of those who did not join in or authorize the suit was identical with the interest of the plaintiffs. The rule applicable to plaintiffs, each claiming under a separate and distinct right, in respect to a separate and distinct liability and that contested by the adverse party, is not applicable here. For although as to the tax for the particular year, the injunction sought might restrain only the amount levied against each, that order was but preliminary, and was not the main purpose of the bill, but only incidental. The amount in dispute, in view of the main controversy, far exceeded the limit upon our jurisdiction, and disposes of the objection of appellees in that regard." 138 U.S. at 394, 11 S.Ct. at 310.

not been followed in any later Supreme Court cases.[11]

It is also true, however, that *Brown* has not been expressly repudiated, and that Professor Moore has read *Brown* as establishing a separate class of taxpayer actions with respect to which aggregation of claims is appropriate.

> *Brown* v. *Trousdale,* holding that the claims of all the taxpayers could be aggregated, and *Russell* v. *Stansell,* refusing to allow aggregation of taxpayers' claims are consistent on the analysis that where a public right was involved claims could be aggregated, but not when personal claims were in issue.

3B J. Moore, Federal Practice ¶ 23.13 at 23–2961 (1974).[12]

We are unable to accept Professor Moore's interpretation of *Brown* as indicating that the aggregation of taxpayers' claims is permissible if a public right is involved. No such rule is suggested by the *Brown* opinion itself. Moreover, that interpretation of *Brown* cannot be reconciled with the Supreme Court's later holding in *Scott* v. *Frazier,* 253 U.S. 243, 40 S.Ct. 503, 6 L.Ed. 883. In that case, 42 taxpayers sought, on behalf of all North Dakota taxpayers, to restrain member of the North Dakota Industrial Commission from paying out certain public funds and issuing bonds, contending that two amendments to the State Constitution and the statutes authorizing payments were null and void. The essence of plaintiffs' challenge was that the defendants would be using these public funds for private purposes in violation of the Fourteenth Amendment. On appeal from the district court's dismissal, in part for want of jurisdictional amount (258 F. 669, 671–674 (D.N.D. 1919)), the Supreme Court affirmed in a memorandum opinion, stating:

> There is no allegation that the loss or injury to any complainant amounts to the sum of $3,000. It is well settled that in such cases as this the amount in controversy must equal the jurisdictional sum as to each complainant. *Wheless* v. *St. Louis,* 180 U.S. 379, [21 S.Ct. 402, 45 L.Ed. 583]; *Rogers* v. *Hennepin County,* 239 U.S. 621, [36 S.Ct. 217, 60 L.Ed. 469].

253 U.S. at 244, 40 S.Ct. at 503.

*Scott* is clearly inconsistent with the earlier decision in *Brown.* In each case plaintiffs brought suit on behalf of all taxpayers within the relevant taxing body, challenging the legality of governmental activity that would affect all in a similar manner. Neither case was limited to an attempt to restrain the collection of a tax or assessment for just a single year; in both, the validity of the underlying expenditure of public funds was challenged. The grievance was common to all. The relief sought could not be legally injurious to any of the taxpayers. In each the interests of the

---

11. Indeed, with the single exception of *Colvin* v. *Jacksonville,* 158 U.S. 456, 460, 15 S.Ct. 866, 39 L.Ed. 1053, it has never even been cited in any later Supreme Court case. That case involved a single taxpayer who sought to enjoin the issue and sale of bonds, and merely stands for the proposition that it is the harm to the plaintiff rather than the value of the controversy to the defendant that determines whether the jurisdictional amount requirement has been met.

12. On the basis of Professor Moore's conclusion, the district court in *Matthews* v. *Massell,* 356 F.Supp. 291 (N.D.Ga.1973) held that aggregation was permissible in a taxpayers' suit challenging the use of revenue sharing funds. The court stated that the suit was brought to vindicate a public, rather than a private, right.

"Plaintiffs do not challenge the assessment of taxes against them individually but instead express an interest in insuring that a large fund of revenues be spent in a lawful manner. Further, plaintiffs by this suit seek to prevent the forfeiture of those funds and/or the imposition of a penalty. Such forfeiture or penalty would cause injury to the general funds of the City and to the plaintiffs as a class of citizens and taxpayers. Violation of the restrictions of the Revenue Sharing Act would be detrimental to the City, to the named plaintiffs and to the entire class of plaintiffs. The right asserted is thus of a public nature, held in common and indivisible; aggregation of the claims of the plaintiff class is therefore proper and the jurisdictional amount is clearly met." 356 F.Supp. at 298.

unnamed class members were identical to those of the named plaintiffs. The cases are factually indistinguishable.

Since the Court's opinion in *Scott* completely ignored *Brown*[13] and instead cited and relied upon two cases involving suits brought directly to enjoin the collection of taxes or assessments,[14] we cannot accept the suggestion that the Court intended to establish two different classes of taxpayer class actions, one in which aggregation would be permissible and the other in which it would not. We are not persuaded that a workable distinction may be drawn between those taxpayer actions which are brought to vindicate public rights or interests and those in which only private interests are at stake; for in every such action the taxpayer necessarily is asserting a public, as well as a private, interest in avoiding the unlawful expenditure of public funds.[15]

Contrary to Professor Moore, other commentators have concluded that *Brown* has been overruled *sub silentio* by the later decisions. *See* 2 Barron & Holtzoff, Federal Practice and Procedure § 569, at 117 (1970 Supp.); Note, "Taxpayer Suits and the Aggregation of Claims: The Vitiation of Flast by Snyder," 79 Yale L.J. 1577, 1583 n. 41 (1970); Note, "Taxpayers' Suits: A Survey and Summary," 69 Yale L.J. 895, 920 (1960); Note, "Aggregation of Plaintiffs' Claims to Meet the Jurisdictional Minimum Amount Requirement of the Federal District Courts," 80 U.Pa.L.Rev. 106, 109 (1931). *See also Fuller v. Volk,* 351 F.2d 323, 327–328 (3rd Cir. 1965), in which aggregation was denied plaintiffs who sought to enjoin the expenditure of state funds in support of school desegregation plans.

■ Consequently, we hold that plaintiffs may not aggregate their claims, and, since none of them individually may satisfy the amount in controversy requirement, the district court did not have jurisdiction over their statutory claim.[16]

---

13. *Brown* was certainly cited to the court. It was specifically mentioned in the district court's opinion. 258 F. at 672.

14. *Wheless v. St. Louis,* 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583; *Rogers v. Hennepin County,* 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469.

15. Where municipal action is challenged as unconstitutional or as being in violation of a federal statute, public rights are inherently protected by the individual taxpayer, even though such a plaintiff may only be interested in protecting his own pocketbook.

"It would not seem possible to make such a distinction since all taxpayers' actions involve an assertion of private rights in order to protect, as the plaintiff sees them, public rights." Note, "Taxpayers' Suits: A Survey and Summary," 69 Yale L.J. 985, 920 n. 146 (1960).

By its very nature, the equitable relief often sought in such actions will redound to the benefit of all. The *Russell-Scott* line of cases necessarily rejects this fact as a justification for aggregation.

16. As a result of this disposition, it is unnecessary for us to reach the question whether an implied private cause of action may be brought under the Revenue Sharing Act. The district court in *Mathews v. Massell,* 356 F.Supp. 291 (N.D.Ga.1973), apparently assumed the existence of such a cause of action, without discussion. A strong contrary argument can be made, however, based on the absence of any reference to citizen suits in the Act and the implementing regulations adopted by the Secretary of the Treasury, 31 C.F.R. §§ 51.0–51.75 (1974). *See Cort v. Ash,* —— U.S. ——, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Instead the Act contains detailed provisions for the monitoring and enforcement of the priority expenditure terms of the Act by the Secretary. *See* 31 U.S.C. §§ 1222(b), 1223(b), (e), 1241(a), (b), 1243(a), (b). *See also* 31 C.F.R. §§ 51.3, 51.10, 51.11, 51.12, 51.31(c), and 51.-50–51.75 (1974). From this it might be argued that "the overall structure and purpose of the . . . scheme are incompatible with such an implied right." *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975). There was no discussion of private actions in any of the committee reports or during the floor debates concerning the Revenue Sharing Act. Indeed, when Senator Hartke proposed amending the bill to provide that no revenue sharing funds were to be used to induce businesses to leave

## II.

Alternatively, plaintiffs attempted to predicate federal jurisdiction on 28 U.S.C. § 1343(3) by asserting a violation of 42 U.S.C. § 1983. If we understand it correctly, the claim is that plaintiffs have a statutory right to have public funds disbursed lawfully, and that any violation of that right is also a deprivation of a right secured by the Equal Protection Clause of the United States Constitution.[17] In short, any violation of statutory law is, *ipso jure,* also a violation of the Fourteenth Amendment. If this expansive theory is adequate to create federal jurisdiction over this dispute, federal judges surely have bootstraps that will enable them to stand on their own shoulders. The civil rights claim is frivolous. Consequently, that claim should have been dismissed for want of jurisdiction. *Bell* v. *Hood,* 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939; *Stream Pollution Control Board of the State of Indiana* v. *United States Steel Corp.,* 512 F.2d 1036, 1040–1041 (7th Cir. 1975).

The order of the district court dismissing the complaint on the merits is vacated and the case is remanded with directions to dismiss for want of jurisdiction.

other localities and included a provision for a private action to enforce this restriction in the district courts, Senators Long and Bennett raised the spectre of taxpayer suits that "could almost stagnate the operation of that community." The amendment was defeated. 118 Cong.Rec. 29526–29528 (1972). One commentator has reached the conclusion that no private right of action exists under the Act. Comment, "Intergovernmental Power Relations in the Expenditure of Federal Funds Through Local Governmental Bodies," 18 Vill. L.Rev. 429, 437 (1973). *Cf.* O. Stolz, "Revenue Sharing—New American Revolution or Trojan Horse?" 58 Minn.L.Rev. 1, 92–93 (1973).

17. The relevant allegation is found in paragraph 28 of the complaint reading as follows:

"The use by the defendants of the funds received pursuant to the Fiscal Assistance Act in the manner in which they have proposed will deprive plaintiffs, and the class they represent, of benefits secured to them by such Act and hence of rights secured to them by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States."

This theory is further explained in plaintiffs' brief at p. 8 in the following language:

"These overt acts denied plaintiffs equal protection of the priority uses asserted in Section 103A [103(a)] of the Revenue Sharing Act, and the plaintiffs, therefore, have a right to enjoin the defendants from making such misappropriation of Revenue Sharing Funds . . ."