CITY OF SEDALIA ex rel. GILSONITE CON- STRUCTION COMPANY, Appellant, v. MONT- GOMERY, JR., et al., Respondents.

St. Louis Court of Appeals, March 15, 1904.

1. **FICTITIOUS CAUSES: Collusion.** Courts are created to de- termine law suits with adverse and hostile interest and will re- fuse to entertain collusive proceedings designed to affect the rights of third parties, strangers thereto.

2. ———: ———: **Question of Fact.** But whether a cause is col- lusive is an issue of fact largely within the discretion of the trial court.

3. **MUNICIPAL CORPORATIONS: Parliamentary Rules.** Although the common council of a city has adopted a certain parliamen- tary code for the guidance of its deliberations, it has the power to suspend, waive or modify such rules and register its will by some method other than that formally provided in its code.

4. ———: **Power of Council: Special Taxes.** The passage of an ordinance by a common council relating to special taxation, au- thorized by statute on certain conditions, is prima facie pre- sumptive of its right to do so in that particular instance.

5. ———: **Common Council: Record of Proceedings.** The journal kept by the clerk of a city of the third class in obedience to sections 5772-74 of the Revised Statutes of 1899, is competent proof of the proceedings of the city council, but is not conclu- sive, and does not prohibit an inquiry into the existence of the facts recited.

6. ———: **Special Taxes: Remonstrance.** Under section 110 of the Act of 1893 relating to improvements to be paid for by spec- ial taxation in the city, providing that the council may have power to order such improvements unless a protest, signed by a

City of Sedalia v. Montgomery.

majority of the resident owners of property liable to taxation therefor, be filed with the clerk of the city within ten days, the council does not acquire jurisdiction to order such improvement until the expiration of the ten days allowed for such protest.

7. ————: ————: ————: **Withdrawal From Remonstrance.** And the property-owners affected, remonstrating against the proposed improvement, may withdraw their signatures from the remonstrance before the expiration of the ten days, and, in such case, they cannot be counted as remonstrants so as to affect the power of the city council to act in the premises.

8. ————: ————: ————: **Impeaching Remonstrance.** A remonstrance against a contemplated improvement to be paid for by special taxation may be impeached by evidence controverting the ownership and authority of subscribers thereto.

9. ————: ————: ————: **Withdrawal From Remonstrance.** A signer of a remonstrance who filed a letter with the clerk, withdrawing from the remonstrance before it was filed, should be excluded from the number of remonstants.

10. ————: ————: ————: **Administrator.** The signature of the administrator of an estate to a remonstrance cannot be counted as "owner" of property liable to taxation.

11. ————: ————: ————: **Partnership.** Where the title to property affected stood in the name of a partnership, the partner whose name alone appeared in the title could be counted.

12. ————: ————: ————: **Officers of Corporation.** Officers of a corporation, unless specially authorized by the board of directors, are without power to bind a corporation by signing a remonstrance.

Appeal from Franklin Circuit Court.—*Hon. Wm. A. Davidson*, Judge.

Reversed and certified to supreme court.

*Geo. P. B. Jackson* for appellant.

(1) The record of the council is the journal of the council proceedings which the clerk is required by law to keep. This journal should contain a minute of every act of the council. R. S. 1899, secs. 5772 and 5774. In so far as it does so it is competent proof and the only

competent proof of what the council did. It will be conclusively presumed that the council did just what its journal says it did, no more and no less. The law presumes that public officers have discharged their duties properly. Miller v. Dunn, 62 Mo. 216; Baker v. Underwood, 63 Mo. 384; Chandler v. Bailey, 89 Mo. 641, 1 S. W. 745; State ex rel. v. Williams, 99 Mo. 291, 12 S. W. 905; State ex rel. v. Co. Ct. of Wayne Co., 98 Mo. 362, 11 S. W. 758; Owen v. Baker, 101 Mo. 407, 14 S. W. 175; Bailey v. Winn, 101 Mo. 649, 12 S. W. 1045; State ex rel. v. Mastin, 103 Mo. 508, 15 S. W. 529; St. Joseph v. Farrell, 106 Mo. 437, 17 S. W. 497; Leonard v. Sparks, 117 Mo. 103, 22 S. W. 899; Mitchener v. Holmes, 117 Mo. 185, 22 S. W. 1070; State ex rel v. Bank, 120 Mo. 161, 25 S. W. 372. This rule is applied to legislative acts. Railroad v. Jones, 54 Mo. App. 529; State ex rel. v. Slover, 126 Mo. 652, 29 S. W. 718; State ex rel. v. Field, 119 Mo. 593, 24 S. W. 752; St. Louis Co. Ct. v. Griswold, 58 Mo. 175. (2) The council had power to adopt its own rules of parliamentary procedure. R. S. 1899, sec. 5772. Such power exists independently of the statute and inheres in every deliberative body. Pursuant to such power, it adopted Cushing's Manual as its parliamentary guide. Therefore, all parliamentary terms must be construed to mean what Cushing's Manual defines them to mean. Cushing's Manual, sec. 13, 14, 43, 233. Hence it has been held that a council can only act by resolution. Schumm v. Seymour, 24 N. J. Eq. 153; Moser v. White, 29 Mich. 50. (3) The property-owners have the right to remonstrate, or withdraw their objections, at any time within the ten days limited by the statute, whether the remonstrance has been filed or not. State v. Gerhardt, 145 Ind. 439, 44 N. E. 469; Hays v. Jones, 27 Ohio St. 231; Lanntman v. Maxwell, 154 Ind. 114. And the right of withdrawal exists whether it be from a petition favoring an improvement or a petition (remonstrance) against it. State v. Nemaha Co., 10 Neb. 32; State ex rel. v. Geib, 68 N. W. 1081;

Perkins v. Henderson, 68 Miss. 631; Noble v. City, 42 Ind. 130; People v. Sawyer, 52 N. Y. 299; State v. Eggleston, 34 Kas. 714; Slingerland v. Norton, 59 Minn. 351; LaLonde v. Board, 80 Wis. 380; State v. Supervisors, 60 N. W. 266; State v. Comm'rs. 52 N. W. (Neb.) 842. The same rule has been applied in proceedings for opening and improving roads. Dunham v. Fox, 100 Ia. 131; Black v. Thompson, 112 Ind. 122; Ralston v. Beall, 30 N. E. 1095. The same rule obtains in applications to the municipal authorities to call an election upon the question of the surrender of the city charter. Dutton v. Hanover, 42 O. St. 215. So, also, in the case of a petition presented for the purpose of securing an attachment of a part of an unorganized county to another jurisdiction. State v. Commissioners, 73 N. W. 631. So also in cases of petitions arising under applications for a license to sell intoxicating liquors. Green v. Smith, 111 Ia. 183; Conwell v. Overmeyer, 145 Ind. 698. (4) A city council has no power to make "findings" regarding a remonstrance, and no authority to make a "record" thereof which is binding upon anybody. The record shows that the committee counted among the thirty-two signers, one person who had filed her letter of withdrawal before the remonstrance was filed. Such person had a right to withdraw and should not have been counted. (5) An administrator as such has no right to sign a remonstrance for his decedent. Dalby, administrator of the estate of Mary A. Hogue, should not have been counted. Mulligan v. Smith, 59 Cal. 225; Rector v. Board, 50 Ark. 116; Holland v. Baltimore, 11 Md. 186; Batty v. Hastings, 63 Neb. 26. A conveyance to S. Wright & Son passes the legal title to S. Wright. Hence, S. Wright & Son should not have been counted two remonstrants. Arthur v. Weston, 22 Mo. 378; Reinhard v. Mining Co., 107 Mo. 624, 18 S. W. 17. (6) It is not necessary that the record of the council recite the facts essential to the exercise of the power to improve streets. "It is the fact, rather than

the method of proving it, which is essential, and, therefore, it was competent to prove the fact by oral testimony of a witness." Springfield v. Knott, 49 Mo. App. 612; Nevada v. Morris, 43 Mo. App. 586. (7). The council did not at all times have the power to improve a street, subject to be divested of that power by remonstrance of a majority of the property-owners. The power was only vested through and by means of the action provided in the statute, and at the time when the statute says: "Then the council shall have power to cause such improvement to be made." R. S. 1899, sec. 5860. The provision of the law for filing remonstrances is a method of giving expression to the will of the majority of the property-owners, and, if they favor the improvement, of conferring power upon the council to proceed with the work, and not a means of "ousting jurisdiction" or destroying an existing power. Armstrong v. Ogden City, 12 Utah 476, s. c. 168 U. S. 232; City Lt. Imp. Co. v. Babcock, 123 Cal. 205; Clinton v. Portland, 38 Pac. 407.

*Barnett & Barnett* for respondents.

(1) The record clearly shows that the council undertakes to get jurisdiction by assuming the law to be as stated by the city counselor, i. e., that the parties withdrawing their names after the protest had been filed should be counted in favor of the improvement. Upon the filing of such protest, the city council ceased to have any jurisdiction to proceed with the work. Laws 1893, p. 92, sec. 110; Forbis v. Bradbury, 58 Mo. App. 506. The proceedings of the council upon their face show that a sufficient protest was filed within the time prescribed by law. Knopfli v. Roofing and Paving Co., 92 Mo. App. 290; Wilson v. Simmons, 36 Atl. 380; Allen v. City of Portland, 58 Pac. 513; City of Sedalia ex rel. v. Scott, 104 Mo. App. 595, 78 S. W. 276. In matters of this kind the record of the proceedings

must on its face show a complance with all the conditions made necessary by the statute to a valid exercise of the taxing power. Morris v. Omaha, 93 N. W. 734; John v. Connell, 89 N. W. 806; Miller v. City of Amsterdam, 149 N. Y. 297; Ogden City v. Armstrong, 168 U. S. 224. It is true the city council could adopt for its guidance Cushing's Manual, but is not bound to act in accordance with its rules or by-laws. Such bodies may, and perhaps do oftener than otherwise, waive them. Holtz v. City of Summerville, 127 Mass. 411; Bennett v. New Bedford, 110 Mass. 433; Ex parte Mayor, 23 Wend. 280. (2) Upon the filing of the protest containing a majority of the property-owners, the council ceased to have jurisdiction. Laws 1893, p. 92, sec. 110. Also see Laws 1893, p. 35, sec. 1, providing that in certain cities under special charter persons remonstrating may withdraw their names. This we cite in this case to show a legislative construction by the same Legislature to the effect that the act itself must provide for withdrawals before the effect of the remonstrance can be destroyed by withdrawals. Brewing Co. v. Jersey City, 42 N. J. L. 575; Vanderbeck v. Jersey City, 44 N. J. L. 626; Armstrong v. Ogden City, 43 Pac. 119; Roebling v. City of Trenton, 32 Atl. N. J. L. 635; Clinton v. City of Portland, 26 Or. 410; Light Co. v. City of Los Angeles, 106 Cal. 156; City Imp. Co. v. Babcock, 123 Cal. 205; Grinnell v. Adams, 34 Ohio St. 44; Lomis v. Bailey, 45 Iowa 400; Koppel v. Hendricks, 1 Barb. 449; Tapley v. Martin, 116 Mass. 275; Upton v. Railway, 25 N. J. Eq. 372; Mollay v. Torrence, 9 Wheat 537; Cook v. United States, 2 Wall. 218; Dunham v. Ins. Co., 46 Texas 182.

*G. W. Barnett, amicus curiae.*

The proceedings to remove this cause to this court are collusive, by parties whose interests are not adverse but indentical, and are for the purpose of effecting the

rights of those who are not parties to this suit. It is to obtain a decision of this court in order to compel the transfer of other cases in another court to the Supreme Court and is therefore collusive, and the appeal should be dismissed. Meeker v. Stratt, Admr., 38 Mo. App. 239; State ex rel v. Westport, 135 Mo. 120.

STATEMENT.

This, an action on special taxbills, part of the issue in payment for paving West Sixth street, in the city of Sedalia, originated January, 1902, in the circuit court of Pettis county primarily against John Montgomery, Jr., and Rollingsford Savings Bank, as joint defendants.

The petition was subdivided into three counts upon a like number of taxbills, each count (with appropriate modification and passing by the formal statements) averring that on the tenth of February, 1898, the authorized officers as officials of the city of Sedalia, issued the bill, under the ordinance referred to against the realty described, to the Gilsonite Roofing and Paving Company, assignor of the relator, describing the interests of defendants in the realty and asking judgment. The defendants entered their appearances to the action on the day it was brought, and filed a stipulation signed by them for judgment at the ensuing December term, if prior payment of the bills had not been made, and in event of payment before such December term, the case was to be dismissed. In April, 1902, by consent, the stipulation was withdrawn and defendants, by attorney, filed a joint answer admitting the usual conventional affirmations of the petition, but averred that within the period provided by law, a majority of the resident owners of property on the street liable for taxation for the proposed improvement, duly filed their remonstrance against it, whereby the city council of Sedalia had no power to cause such improvement to be made; that not-

withstanding such protest and want of authority, the council unlawfully passed an ordinance No. 207, July 19, 1897, providing for the pavement of the street, the contract was awarded to relator and the work completed by it at the contract price and accepted by the city council, which passed an ordinance directing the issuance of special taxbills in payment and against the parcels of realty abutting on the street improved. The answer proceeded to set out the respective interests of defendants severally as owner and mortgagor and mortgagee of the realty, and terminated with apt allegations of the invalidity of the taxbills and prayer for their cancellation.

The reply of plaintiff specifically denied the remonstrance by a majority of the resident owners of property, on Sixth street liable for taxation for the improvement against such improvement and the consequent absence of power in the city council to cause the improvement, and averred that the pretended remonstrance was not signed by such majority, that many of the signers were not owners of abutting property, at the time of signing such remonstrance or when it was filed; that within the period legally fixed and before the remonstrance was filed, after the remonstrance was filed and before the expiration of the time appointed, six of the parties signing, by writing filed with the city clerk, withdrew their names and petitioned to have the street improved as provided by the resolution of the council. At the same time there were filed a stipulation for change of venue to the circuit court of Franklin county, and also by the attorney of various other owners of parcels of realty fronting on the reconstructed street, against which similar taxbills had issued, a verified suggestion and motion as *amicus curiae*, averring and charging that there were no adverse interests involved in such action, but the interests of the opposite parties were identical and the plaintiff and defendants had conspired to impose upon the court a pretended contro-

versy, that the action was a fictitious proceeding in which the parties collusively sought, by medium of removal of the cause to a county within the jurisdiction of the St. Louis Court of Appeals, to obtain a decision of the latter court, overturning the decision of the Kansas City Court of Appeals, adjudging the same special taxbills invalid and thereby ultimately secure a certification of the case to the Supreme Court, wherein defendants would seek to insure judgments against themselves, thus defeating defendants in other cases affecting the validity of like bills. The motion and suggestions concluded with a prayer to have the cause stricken from the docket, or a refusal to transfer the cause to any court outside of the jurisdiction of the Kansas City Court of Appeals. The court withheld any immediate action and in the interim, W. E. Bard, Jr., by attorney, interposed for leave to become a party, as successor to interest of the defendant Montgomery; January 1903, the court overruled the motion of the *amicus curiae* and awarded a change of venue to the circuit court of Franklin county, where, in July, 1903, Bard was made party and entered his appearance as defendant, and on the same day Lee Montgomery, alleging he had succeeded Bard in interest in lot numbered 3, described in the petition, was admitted as defendant and with Bard, adopted the answer of the original defendants, and a non-jury trial resulted in judgment for defendants, from which this appeal followed.

The improvement was made and the taxbills were issued under sections 108, 9 and 10 of an act of the Thirty-sixth General Assembly, repealing article 4, chapter 30, Revised Statutes 1899, and substituting a new article providing for the government of cities of the third class [Laws 1892-3, p. 65] especially section 110, providing that, ''When the council shall deem it necessary to pave, etc., any street within the limits of the city for which a special tax is to be levied, as herein provided the council shall, by resolution, declare such

work or improvements necessary to be done, and cause
such resolution to be published in some newspaper pub-
lished in the city for two consecutive weeks; and if a
majority of the resident owners of the property liable
to taxation therefor shall not, within ten days thereaf-
ter, file with the clerk of the city their protest against
such improvements, then the council shall have power to
cause such improvements to be made and to contract
therefor and to levy the tax as herein provided." The
publication of the resolution of the council was com-
pleted June 6, 1897, thus confining the ten days' limit
within which the remonstrance should be presented to
June 16th, and June 14th such instrument was filed with
the city clerk, to which names of owners of forty-one
parcels of realty appeared to be subscribed. It was ad-
mitted that one signer, Fannie Hartshorn, withdrew
her name from the remonstrance before it was filed, and
that six of those remaining had filed with the clerk the
day following its filing, their written withdrawals and
request for erasure of their names from the protest be-
fore its consideration by the council; at regular session
June 21st, the remonstrance together with the communi-
cations of withdrawal of signers was read, referred to a
special committee composed of the city counselor, the
city engineer and the street and alley committee of the
council, whose report signed by the city engineer and
two of the three members of the street and alley com-
mittee with opinion of the city counselor attached was
returned June 28th, received and placed on file; the or-
dinance for the reconstruction was thereupon intro-
duced and subsequently duly passed. The report of the
committee announced that the total number of resident
property-owners was sixty-one, the number of signers
to the remonstrance, thirty-two, deducting names with-
drawn, five, left twenty-seven, counted on the remon-
strance and number left in favor thirty-four, and fur-
ther embodied that the names of the parties, competent
to be counted for or against the paving, had been de-

termined upon the advice of the city counselor, as shown in the letter appended; the opinion of the city counselor addressed to the city engineer in reply to the questions pertinent hereto, particularly what constituted a resident owner of property, whether a person signing a remonstrance could change the effect of his signature, so as to be counted for instead of against the pavement, when made in form of a written request signed and filed before the time for the remonstrance expired, and whether an administrator could sign a remonstrance and be counted where property of the estate fronted on the street, contained his opinion defining resident ownership, replying in the affirmative to the second inquiry and expressing the conclusion that an administrator for reasons assigned was without authority to sign in favor of or remonstrate against such improvement.

At trial plaintiff rested after tender in evidence of the special taxbills, their assignment to plaintiff being admitted, and defendants introduced the testimony following: the resolution of the council to improve the street, proof that the two weeks' publication terminated June 6, 1897, the minutes of the council to the effect that a remonstrance against paving Sixth street was read, also communications from Fannie Hartshorn and other property-owners named, six in number, asking that their names be erased from the remonstrance, were read and on motion referred to the city counselor, the street and alley committee and city engineer for investigation; the remonstrance bearing names of forty-three subscribers, the report of the above-named committee, the letter or opinion of the city counselor, the letters of withdrawal from the remonstrance, one of Fanny Hartshorn and one with six signatures dated June 14th and filed June 15th; the minutes of the council of June 28, 1897, showing report of the committee and that on motion of its non-signing member, the report was received and placed on file and finally the ordinance itself.

Plaintiff, in rebuttal, tendered the testimony of the city engineer, that various subscribers including Fannie Hartshorn had been included in estimate of total signers, that some of the names of the remonstrants out of the thirty-two counted were not signatures of such parties, and that they did not authorize any one to sign for them, but at objection of defendants, all such testimony was excluded. Plaintiff offered further testimony impeaching other signatures to the remonstrance as illegal and unauthorized and that in lieu of sixty-one resident owners of property liable to taxation on the part of the street improved, there were eighty-two such owners entitled to remonstrate, all of which was excluded as incompetent in tending to contradict the findings of the council. Plaintiff further introduced the rules of the city council then in force, particularly that section adopting "Cushing's Manual" and designated sections of "Cushing's Manual" and concluded with part of the minutes of the council of June 28th, indicative of the fact that after the above motion was carried, a tardy member appeared, took his seat and the council assumed consideration of a measure of grave importance to the city, namely, an ordinance authorizing the issue of refunding bonds in a substantial amount, which was put upon its first reading.

REYBURN, J. (after stating the facts).—1. At the portal of the cause, we are faced with a revival and re-iteration of the charges of collusion between the parties confronting each other as plaintiff and defendants. While it is indisputable that legal tribunals are not created to hear and decide moot cases, and that lawsuits contemplate adverse parties and hostile interests, and courts will refuse to entertain proceedings inaugurated and designed to affect the rights of third parties, strangers thereto, whereby such actions cease to be antagonistic and are rendered collusive [Meeker v. Straas, Admr., 38 Mo. App. 239; State ex rel. v. Westport, 135

Mo. 120, 36 S. W. 633], yet this record is devoid of any evidence sustaining such arraignment and being largely an issue of fact, the denial of the motion by the circuit court of Pettis county, where the action was commenced, will go far in controlling such question, and no reason has been exhibited to overthrow its discretionary action or requiring any disturbance of its ruling in this regard.

2. The contention of respondents, summarized in the language of their counsel, is that when the remonstrance was filed and thereafter certain withdrawals were made therefrom and the council referred the matter to a committee for investigation, which reported that it found sixty-one resident property-owners, of whom thirty-two had by remonstrance filed a protest against the proposed improvement but of the qualified parties signing the remonstrance, five had withdrawn, thus leaving but twenty-seven remonstrating; and further reporting that the committee had determined the qualification of those remonstrating upon the opinion of the city counselor filed with the report, and which report of the committee was received and placed on file, that such report became part of the record, when the council contemporaneously passed an ordinance directing the improvement and the passage of such ordinance constituted in legal effect, the adoption of the report, and disclosed the theory of the council upon which the latter ascertained and determined the remonstrance insufficient, and constituted a conclusive declaration by the record, that it had acquired jurisdiction to enact the ordinance by reason of the withdrawals attempted after the protest had been filed; that the law made imperative and essential that the record should disclose lawful authority to make the improvement, and such record evinced, that the council had found that a majority filing the remonstrance had been converted into a minority by the withdrawals, and thereupon as the record itself displayed a want of power and jurisdic-

tion, neither the city nor the owners of the taxbills could contradict such record, but the latter upon its face must disclose jurisdiction. Respondents further contended that a remonstrance, containing a majority of the resident property-owners, when filed with the city clerk conclusively ousted the jurisdiction of the city council to continue with the contemplated improvement, and the power could not be restored by withdrawal of names thereafter, and the council, therefore, was debarred from progressing except by proceedings anew. The situation, therefore, may be elucidated into the simple inquiries whether defendants established by competent proof, that a remonstrance over the signatures of the requisite majority of the qualified owners of property subject to assessment for the improvement was filed, and if such duly signed protest was presented, then whether plaintiff should have been accorded the right of impeaching or assailing the signatures thereto or was such protest thus executed and tendered final and conclusive. It is urged by appellant that the disposition of the report of the committee employed was ambiguous and indefinite and its mere reception did not constitute an adoption because not fixed upon by resolution. By putting the ordinance for the paving upon its passage after such action upon the report, the council adopted the latter in as effective a manner as if by formal resolution and motion, and if such action was not in strict accord with the sections of the parliamentary code adopted for guidance of the council's deliberations, that body as every deliberative body reserved the discretionary right to exercise, formally or informally, at its pleasure the power of suspension, waiver or modification of such rules. [Holt v. City of Somerville, 127 Mass. 411; Bennett v. New Bedford, 110 Mass. 433.] The result of the action of the council was in effect a finding that under the law a majority of the qualified owners had not executed the remonstrance, and this conclusion of the council, illustrated by putting the ordi-

nance upon its passage, was assailed not by proof that in fact a legal majority of such qualified owners had remonstrated, but by endeavor to indicate a fatal infirmity and legal defect in the process by which such conclusion was attained. To sustain such contention it was made essential for respondents to concede that the committee found that a legal majority did not protest, but arrogating the right to reject, as not conclusive, such decision of the committee, and affirm that the record itself attested that such majority did remonstrate and the council was shorn of power to proceed with the improvement.

The inquiry whether the conclusion of the council upon the validity and sufficiency of a petition in favor of, or in protest against, the performance of such public work is a final adjudication, involving decision of a jurisdictional fact, has received opposing answers and has been solved at variance in different jurisdictions. The view expressed in an earlier case by this court appears to negative the conclusiveness of such decision in the absence of express legislative power. In Fruin-Bambrick Con. Co. v. Geist, 37 Mo. App. 509, an action upon a special taxbill issued for improvement of an alley in the city of St. Louis, the defendants resisted recovery upon the ground, among others, that a remonstrance against the proposed improvement of the alley had been signed by the owners of more than the requisite major part of the owners of the property in the block intersected by the alley, and the court pertinently says: "It appears inferentially from the record that the board of public improvements decided that the remonstrance was not signed by the owners of a major part of the block and the appellant contends that the finding of this fact by the board of public improvements was conclusive. We can not consent to this. This was a jurisdictional fact and the decision of the board in the absence of an express legislative provision to that effect would not be conclusive." A like rule obtains in

the State of New York, announced in Miller v. City of
Amsterdam, 149 N. Y. 288. [City of Bloomington v.
Reeves, 177 Ill. 161; Cummings v. Comrs. 181 Ill. 136.]

An eminent commentator in his admirable treatise
on the law of taxation, in the chapter devoted to taxa-
tion by special assessment, under heading "Municipal
Action" expressed the following view: "Municipali-
ties having no inherent power in these cases, it is neces-
sary to the validity of their action that they keep closely
to the authority conferred. Their ordinances and res-
olutions must be adopted in due form of law and they
must keep within them afterwards. They can bind the
taxpayers only in the mode prescribed and can substi-
tute no other. Their legislative action if properly taken
is conclusive of the propriety of the proposed improve-
ment, and of the benefits that will result, if it covers
that subject, but it will not conclude as to the prelimi-
nary conditions to any action at all; such for example,
as that there shall be in fact such a street as they un-
dertake to provide for the improvements of, or that the
particular improvement shall be petitioned for or as-
sented to by a majority or other defined proportion of
the parties concerned. This last provision is justly re-
garded as of very great importance, and a failure
to observe it will be fatal at any stage in the proceed-
ings. And any decision or certificate of the proper au-
thorities, that the requisite application or consent had
been made, would not be conclusive, but might be dis-
proved." [2 Cooley on Taxation (3 Ed.), p. 1243.]

In a venerable decision from the State of New
York, being ejectment for land to which title was as-
serted by virtue of an assessment and sale for improve-
ment in the then village of Brooklyn, the court says:
"The defendant insists that the petition conferred jur-
isdiction on the trustees to lay out a well and pump dis-
trict, etc., provided they should judge that a majority
of the persons intened to be benefited had signed; that
by granting the petition and proceeding with the work,

the trustees adjudicated upon the question, and determined that a majority had petitioned; and that this judgment of the trustees is conclusive upon all persons so long as it remains unreversed. It is impossible to maintain that in this matter the trustees were sitting as a court of justice, with power to conclude any one by their determination. True they were called upon to decide for themselves whether a case had arisen in which it was proper for them to act. But they acted at their peril. They could not make the occasion by resolving that it existed. They had power to proceed if a majority petitioned, but without such a petition they had no authority whatever. They could not create a power by resolving they had it." [Sharp v. Spier, 4 Hill (N. Y.) 76.]

The same conclusion is given expression in Allen v. City of Portland, 35 Oregon 420, the court therein stating: "But the question as to its (i. e., the common council) jurisdiction to act in any given case, like courts of limited, special and inferior jurisdiction, is always open to inquiry; and in any event its decision or determination may be attacked collaterally for want of such jurisdiction. It cannot legally assume to act until the facts exist upon which its jurisdiction depends and no decision or determination that it has, can avail in the absence of such facts. By the express charter provisions, it is not to give notice, or act in the exercise of the power delegated, until the requisite petition is filed; and its judgment that it conforms to the requirements of the charter could not make it so, if it was otherwise, or give it validity in invitum. [Cagwin v. Town of Hancock, 84 N. Y. 532.] Notwithstanding, the council is bound to exercise its judgment in determining whether a valid petition has been presented, and this it does for the purpose of ascertaining whether it is warranted in taking further action under it, yet its judgment is not conclusive unless made so by express legislation and such is not the case under the charter. Inquiry may be

made, therefore, with respect to the fact of jurisdiction, in a proceeding to enjoin the collection of an assessment purporting to have been made by and through the authority of the council." [Alpin v. Fisher, 84 Mich. 128; Ogden City v. Armstrong, 168 U. S. 224.]

The sounder and better sustained view would seem that the *ex parte* decision of the council in such matters is but prima facie and presumptive, in absence of direct conclusive power clearly conferred by the legislature, and if such conclusions be not merely legislative or ministerial in their character and even if treated as of a quasi-judicial nature, they are not final and the council record or journal is merely evidence of the action of the body, not absolute proof of the verity and correctness of the decision itself; for upon the fact respecting the remonstrance the jurisdiction or power of the council to act is made dependent. This authority of the city council is not a continuous power subsisting but subject to be divested by the filing of a protest containing the prescribed quota of qualified objectors, but more properly it may be defined as a right, dormant and inert, until animated by the will of the majority of the resident property-owners liable to be assessed for the intended improvement, whose assent is implied from absence of majority protest. That such power by tacit assent, implied of those not affirmatively expressing their dissent by protest, is awakened to set in motion and render operative the legal machinery of the statute empowering the improvement. The language employed in the act of 1893 is appropriate for such construction. Section 110 recites "and if a majority of the resident owners of the property liable to taxation therefor, shall not within ten days thereafter, file with the clerk of the city their protest against such improvements then the council shall have *power* to cause such improvement to be made," etc. The Supreme Court of the United States, in explicit terms, has given weight to the proposition that under such conditions no jurisdiction

exists to construct the improvements until the implied approval of a majority of the property owners is had through their failure to object. In Armstrong v. Ogden, first found reported in 12 Utah 476, and on final appeal in 168 U. S. 232, the ruling of the court was invited upon a bill against the municipal corporation and its mayor and members of its common council to restrain the city and its officers from levying assessments upon the realty of plaintiff, and others in like situation, for the purpose of paving a street of the city. The act under which the taxbills were sought to be issued, provided for public notice of the improvement to be advertised in manner and form defined, and proceeding embodied: "If, at or before the time so fixed, written objections to such improvements signed by the owners of one-half of the front feet abutting upon that portion of the street, avenue or alley to be so improved be not filed with the recorder, the council shall be deemed to have acquired jurisdiction to order the making of such improvements." Judge SHIRAS, expressing the opinion of the court, said: "We agree with the courts below in thinking no jurisdiction vested in the city council to make an assessment or to levy a tax for such an improvement, until and unless the assent of the requisite proportion of the owners of the property to be affected, had been obtained, and that the action of the city council in finding the fact of such assent was not conclusive, as against those who duly protested. The fact of consent by the requisite number, in this case to be manifested by failure to object, is jurisdictional, and in the nature of a condition precedent to the exercise of the power."

In the State of California, the statute governing public work of like character was decided to necessarily import that if such protest had been filed, jurisdiction shall not be deemed to have been acquired. [City Street Improvement Co. v. Babcock, 123 Calif. 205.]

The Supreme Court of Oregon, in Clinton v. City

of Portland, 38 Pac. 407, says: "Section 27 of said article 6 authorizes the common council to improve a street, without giving notice of its intention to do so, when the owners of two-thirds of the adjacent property petition therefor and section 3, supra, authorizes an improvement if no remonstrance by the owners of a majority of the property adjacent thereto to be filed within ten days after the final publication of the council's notice of intention to make the improvement. The charter thus provides two methods of *acquiring* jurisdiction to improve a street," etc.

While not interpreting words identical with those of the act under consideration, but construing language of similar purport, the above authorities strongly incline to the conclusion that the conferring or withholding of power or authority, and not the ousting of jurisdiction pre-existing, is involved in the filing of the remonstrance under the provisions of such statutory enactments. This section established a time limit of ten days within which objection to the improvement might be announced, and until the expiration of such period, the power of the council did not become fixed or defined, and no sufficient reason has been assigned why a party in interest, who in the first instance joined the protestants, by attaching his name to the remonstrance thereafter, for reasons satisfactory to himself, might not recede from such position and ratify or assent to the proposed work. It would seem but logical and reasonable to permit qualified names to be subscribed to the remonstrance, until it was matured for action by the council, and it is difficult to perceive why right of more positive change of purpose should not be permitted a signer of the protest within the period appointed. No direct authority, other than hereinbefore alluded to, has been produced upon this branch of the controversy, but judicial rulings under analogous conditions are not lacking. The practical answer to the possible difficulties ensuing from the various situations so easily conceivable under

such construction is that to all parties, whether favorable or hostile to the contemplated improvements, notice is imputed, that until the expiration of the statutory interval, the intention of the qualified property owners is not finally expressed, but until the ten days has ended may vary and is subject to reversal on reconsideration.

Decisions which may be of guidance, while not express authority, may be found in proceedings under the laws of the various States to secure liquor licenses, establish drainage districts and locate county seats or public roads. In Sauntmann v. Maxwell, 154 Ind. 114, a proceeding under a drainage act allowing ten days after docketing of the petition for landowners to object, the remonstrance against the proposed drain was likened to a remonstrance against the granting of a liquor license, and it was therein ruled that any remonstrant had the right to withdraw within the period fixed, whether the remonstrance had been filed or not, and after the ten days had elapsed, the question for determination on the petition and remonstrance was whether or not the required number of qualified landowners were remonstrants at the expiration of such period. [State v. Gerhardt, 145 Ind. 439.] In Ohio it has been held that resident landholders, who have subscribed a petition for road improvement, may, at any time prior to such improvement being finally ordered, withdraw their assent by remonstrance or have their names stricken from the petition. [Hays v. Jones, 27 Ohio St. 218.] In Iowa, in Green v. Smith, 111 Iowa 183, distinguishing earlier cases in 45 Iowa 400, and 47 Iowa 390, it was held that a voter, signing a statement of consent to the sale of liquors under the statute, could withdraw his consent after it is filed, and before it was acted on by the board of supervisors, upon which was imposed the duty of a public canvass of such statement after ten days' notice had been given of such intended canvass.

In other States the same principal has obtained recognition and has been applied. [State v. Nemaha

County, 10 Neb. 32; State ex rel. v. Geib, 68 N. W. 1081; Perkins v. Henderson, 68 Miss. 631.] The following apt languages justifies its citation: "A remonstrance is defined to be a petition to a court or deliberative body, in which those who have signed it request that something which it is in contemplation to perform shall not be done. There would seem to be nothing irrevocable in the signing of a petition. We conclude that when the petitioners signed and presented to the council the remonstrance, protesting against that for which they have petitioned, and withdrawing their names from the petition, it stood, so far as they are concerned, as though they had never signed it.

"Was the remonstrance in time to counteract the effect of the petition? We think it was. The petition had been presented to the council and it had been referred to a committee of the council when the remonstrance was filed. No other steps had been taken by the council until the petitioners had withdrawn their names from the petition. In our opinion there had not been, at that time, any binding and conclusive action of the council upon the petition. No right had accrued in favor of anyone or which could be enforced by anyone." [Noble v. Vincennes, 42 Ind. 125.]

Also the following discussion of the question taken from People v. Sawyer, 52 N. Y. 296: "The question in the present case is, can a petitioner after signing a petition and becoming an applicant by its presentation to the judge, thereafter and before the testimony is closed, withdraw as an applicant and have his name and taxable property excluded from the computation of the applicants? It is said that he can not for the reason . . . that signing the petition is equivalent to casting a ballot in the affirmative and that a signer is concluded by signing, the same as a voter at an election by actually handing and having his ballot deposited in the box. I am unable to see any analogy in the cases. No one has any interest in the petition except the signers. . .

"It is further urged that a taxpayer, by signing the petition is estopped by the relation thus entered into with the other signers, from thereafter withdrawing therefrom. . . The signer of the petition acquired no right and conferred none upon any other thereby. . ..

"It is also stated that to permit him to withdraw would be a fraud upon the other signers. But . . . all the right that anyone has, is to have his own name counted and his taxable property computed by the judge in determining the case.

"It is argued that the right given to appear upon the hearing and request to unite in the petition, while the statute makes no provision for the withdrawal therefrom by those who have signed, shows that the legislature did not intend that the latter should have any such right. . . . It was not necessary that the statute should give the right to withdraw. This right the law gives petitioners unless prohibited by the statute.

"It is said that the others may have been induced to incur expense upon the faith of his signature in the further prosecution of the proceeding. The answer to that is, that if any of them have incurred expense, it was on their own account and furtherance of their own purposes. Signing the petition conferred no right upon another to expend money on the faith of the signature. No such inference can fairly be made.

"A signer can not be estopped from withdrawing upon the ground that he had induced another to act upon the faith of his signature who will be prejudiced thereby. Besides, signing the petition is only a representation that he is then in favor. . . . It is not a promise that he will not exercise his right to withdraw in case he changes his mind upon further information.

"The allowance of the right to withdraw will tend to prevent fraud in procuring signatures, as signatures so procured will be almost certain to become useless by the exercise of the right by the person induced to sign."

Appealing again to the provisions of the statute

under which the bills were issued, section 113 declares: "Such special tax bills shall in any action thereon, be prima facie evidence of the regularity of the proceeding for such special assessments, of the validity of the bill, of the doing of the work and furnishing of the materials charged for, and of the liability of the property to the charge stated in the bills." Upon the introduction of the bills in evidence, they constituted presumptive proof of all essentials to recovery and the burden devolved upon defendant to establish the omission of some material step or disprove some substantial element in the proceedings.

From the foregoing premises, we derive the conclusions that the journal of the council kept by the clerk in obedience to the statute [R. S. 1899, secs. 5772-74] inclusive of the report of its committee, was competent proof of the proceedings of the council, but did not prohibit disproof of or inquiry into the existence of the facts prerequisite to exercise of the power to cause the improvement to be made, and the validity of the protest was subject to impeachment by evidence controverting the ownership and authority of the subscribers thereto: that the name of the subscriber to the remonstrance, who had filed her letter of withdrawal before the protest was filed, should have been excluded from computation among the remonstrants; that the signature of the administrator, the mere personal representative of his intestate, was not the owner of realty of the estate within the statute and could not bind the heirs, the true owners of the realty liable to the charge, and he acted without authority and beyond his powers in so attempting by signing. [Mulligan v. Smith, 59 Cal. 206; Rector v. Board, 50 Ark. 116; Batty v. City of Hastings, 63 Neb. 26.] The conveyance in the firm name vested sole title only in the party named and he alone should have been counted as a single remonstrant. [Reinhard v. Lead, etc. Co., 107 Mo. 616, 18 S. W. 17.] The officers of the corporate landowners, unless spec-

ially authorized by the board of directors, were without power to bind the corporations by their signatures. [Morse v. City of Omaha, 93 N. W. 734.] That remonstrants had right of withdrawing their signatures until the expiration of the period prescribed; and from the record, as introduced by defendant less than a majority of legally qualified remonstrants remained subscribers of the protest at the expiration of the time limit; the council therefore had the power to proceed with the improvement, the issue of taxbills in payment therefor was valid, and the judgment of the circuit court of Franklin county should be reversed. As these conclusions are at war with the opinion of the Kansas City Court of Appeals, expressed in Knopfi v. Roofing, etc., Co., 92 Mo. App. 279, and the city of Sedalia ex rel. v. Scott, 104 Mo. App. 595, 78 S. W. 276, the cause must be certified to the Supreme Court, which is accordingly ordered. *Bland, P. J.,* and *Goode, J.,* concur.