Galbraith, J.
(sitting by exchange).
This is an action brought by plaintiffs as school officers of Chester township rural school district- of Morrow county, Ohio, to *210 enjoin defendants, as the county board of education of said county, from enforcing their action and resolution seeking to combine such school district with the village school district of Chesterville, in such county, and incidentally from causing plaintiffs to turn over to the newly created board of education for the combined district, the books and funds belonging to Chester township rural school district, to enjoin such newly created board from causing and the counts'- auditor from placing on the tax duplicate the newly created district as such, to enjoin the county auditor from making the tax levy of said newly created district, from issuing his voucher to the treasurer-clerk of said newly created district for the August, 1919, installment of the taxes now levied and collected from the taxable property within their district as it now exists, and for a mandatory injunction to require the county auditor to make the levy for school purposes upon the territory of the Chester township rural school district as it now exists and to require him to issue all vouchers in payment of taxes for school purposes for said distinct to Odin H. Dailey as treasurer-clerk of said Chester township rural school district, and for all other proper relief.
• Without separately setting forth the pleadings — petition, answer, amendment to petition and answer thereto — or separating, and specifically rehearsing the issues presented thereby, it appears from such pleadings, by admissions, and the evidence submitted at the hearing, that the situation complained of, so far as is material for an understanding and a determination of the .rights of the parties are concerned, is, in substance, as follows:
Prior to April 19, 1919, Chester township, and Chesterville— a village in such township — were separate school districts and had their separate boards of education.
On such date the county board of education of Morrow county,' at a regular meeting, adopted a resolution seeking to combine such two school districts, under and by authority of General Code of Ohio, Section 4736, said newly created school district to be known as the Chester township school district; and also, immediately thereafter adopted another resolution' appointing the members for the board of education of the newly created district.
Said resolutions are as follows:
“Be it Resolved, that the county board of education of Morrow county, in accordance with Section 4736, General Code, *211 abolish the Cliesterville village school district and the Chester township school district and create therefrom a new district known as the Chester township rural school district, the same including all the territory comprising the two aforesaid districts. And furthermore,
“Be It Resolved, that the clerk of the county board is hereby authorized to notify the boards of education of the two abolished districts of this action, and direct the two boards of education of the aforesaid districts to have their books audited and turn the same over to the newly created board of education, together with all funds in their treasuries. And furthermore,
“Be It Resolved, that the clerk of the county board be directed to file a copy of these resolutions with the county auditor and that the county auditor is hereby authorized to transfer the funds coming into the treasuries of the two abolished districts to the treasurer-clerk of the newly created district. And further,
“Be It Resolved, that the newly created board be authorized to settle all outstanding bills that have been contracted by the two .abolished boards and meet any and all obligations of said boards; and also that the newly created board make an equitable division of all funds and indebtedness belonging to the newly created district.
“Moved by McMillin, seconded by Brown, that the above resolution be adopted. McMillin yes; Brown yes; Howard yes; Levering yes.
“Moved by McMillin and seconded by Howard that the following resolution be adopted:
“Resolved that the following persons be appointed as members of the boai’d of education of the newly created district to serve until their successors are duly elected and qualified: Rolin Kunze, Elmer Sipe, Ralph Waite, Walter Alspach and Taylor Simmons. McMillan yes; Howard yes; Brown yes, and Levering yes.”
On April 22, 1919, a notice of such proceeding was mailed to the board of education of Chester township (rural) school district as follows:
“Morrow County Public Schools. O. C. Crawford, County Superintendent. Mt. Gilead, Ohio, April 22, 1919. To the Honorable Board of Education of Chester Township School District, Gentlemen:
' “You are hereby notified that the county board of education of Morrow county at its regular meeting, Saturday, April 19, 1919, united the Chester township school .district and the Chesterville village school district in accordance with the provisions of See *212 tion 4736, General Code. The newly created district comprising all the territory composing the two aforesaid districts will be known as the Chester township school district. The following persons were appointed as members of the board of education of the newly created school district to serve until their successors are duly elected and qualified, Taylor Simmons, Walter Alspaeh, Ralph Waite, Elmer Sipe and Rolin Kunze.
“You will please have the books of the clerk of the Chester township board of education audited and turn the same over to the newly created board of education, together with all funds in the treasury. The newly created board will take up their duties at the expiration of the thirty days as provided in section above-mentioned. Respectfully submitted, C. C. Crawford, Clerk of the County Board of Education.”
After receipt of such notice by the Chester township board of education there was circulated a remonstrance in both the township and village districts, as is authorized by the section in General Code referred to, on which was secured, in each district, a large majority of the qualified electors, protesting against the combination of such school districts as proposed.
This written remonstrance was filed only a few days — possibly one day — before the expiration of the thirty days within which it could be legally filed, but it appears that knowledge of such remonstrance and of its intended filing was obtained in some way by the county superintendent of schools — the defendant, C. C. Crawford — and he, with the district superintendent for such district and a number of others — some of whom were afterward appointed by the county board as members and officers of the new board for the newly arranged district- — before the actual filing of such remonstrance, circulated counter-petitions, or petition^ to withdraw names of many signers of the remonstrance; and these parties, apparently, surreptitiously acted and held such counter-petitions until the actual filing of the remonstrance and till it was too late to give the qualified electors and taxpayers of these districts any notice thereof or an opportunity to fairly register their views and wishes as to the uniting of the districts.
It appears that these counter-petitions had the effect of reducing below a majority the number of qualified electors and signers of the remonstrance who resided in the village district, and in the combined districts; but, in spite of them, there was *213 still a majority of protesting qualified electors residing in the rural or township district on the remonstrance. ' .
It would extend this memoranda too much if a rehearsal of testimony establishing such conditions was to be made, so counsel and other interested parties are referred to the transcript prepared by the court stenographer.
Suffice to say, the evidence is absolutely clear and convincing and even the “cold type” discloses the interest and feeling on the part of the county superintendent, and his apparent desire to assume autocratic power, to give to the act under which he assumes to proceed its harshest construction so far as granting arbitrary power to the county board is concerned, to abolish entire school districts and to entirely override or disregard the wishes and rights of a majority of the electors of the rural school district, to abolish' the school district and to oust from office the duly elected members of its board of education, to impose additional burden of taxes on the residents of such country district, and not for the purpose of advancing the schools of such district or to make any change thereof, but simply to so increase the tax duplicate for such combined school district that a new high school building might be erected in such village and a second grade high school maintained therein.
Clearly to the mind of the court this was not intended by the Legislature in their enactment of G. C., 4736, else why did they at the same time enact G. C., 4696, and later re-enact such sections by amendments, and especially safeguard and defer to the interests of the electors of the territory to be transferred.
The present G. C., 4736, was originally enacted in 104 O. L., 133 (138), and as a part of the same original act 'was passed G. C., 4735, 4735-1, and 4735-2.
Section 4736 was amended in 106 O. L., 396 (397), but the companion enactments mentioned remain as originally passed.
Analyzing Section 4735, it will be noted that its provision is clear that “present existing township and special school districts shall constitute rural school districts until changed by the county board of education, and all officers and members of boards of education of such existing districts shall continue to hold and exercise their respective offices and powers until their terms expire and until their successors are elected and *214 qualified.” The word “changed” as employed therein, does not necessarily mean to abrogate or dissolve or abolish such districts, 'but merely means that such districts may be changed only.
This view is strengthened by the language employed that such existing township or special school districts shall constitute rural school districts; that is to say, they shall continue as rural school districts as they existed at the time of the adoption, of said ■ section, and shall so continue to exist until such time as the county board of education sees fit to change them. It does not appear to the mind of the court that the language employed in the section is sufficient to authorize the county board of education to dissolve or abrogate such districts, and to oust from their power and office the existing boards.
The amendment of G. C., 4736,- in 106 O. L., 138, changed the phraseology somewhat of the original enactment in 1014 O. L., 397, and yet it does not appear to the court that the amendment was to radically change its purpose.
■ True G. C. of Ohio, Section 4736, as it exists — under which the county board assumed to act — gives such board authority to create a school district from one or more school distncts or parts thereof, and to appoint a board of education for such newly created school district, and to direct an equitable division of the funds or indebtedness belonging to the newly creatéd district, and necessity might arise for such action and it could be applied in many instances without requiring an abolishment of a district and board.
It would be possible “to create” “from one or more school districts or parts thereof” — parts of one or more — without taking all of “one or more” and thereby abolishing “one or more,” but it seems to this court that, even for such purpose, the Legislature, in the first part of such section, limited and restricted the exercise of such power and authority to meet certain conditions and purposes:
“The county board of education shall arrange the school districts according to topography and population in order that the schools may be more easily accessible to the pupils, etc.”
The resolutions adopted declare no such purpose and the evidence clearly shows such was not the purpose in- the action taken.
*215 ■Surely the first part of this act was incorporated for some purpose. Its only purpose could ¡be to limit or restrict the action thereinafter authorized.
While courts at times render decisions which tend to give to the Legislature the attribute of all knowledge, and seek to avoid a usurpation of its power by what is termed judicial legislation, still most courts recognize without question the well established rule of construction that meaning shall be given to all parts and provisions of a statute and each part construed with every other part so as to discover and maintain the intention as a whole.
Counsel for defendants call to the court’s attention, as sustaining the action of the county board, the cases of Cline v. Martin et al, 94 O. S., 420, Fisher v. Whittus et al, 27 O. C. A., 349, and Montgomery Twp. Bd. of Education et al v. County Board of Education, 28 O. C. A., 198.
The court has made a careful examination of these eases all of which were within our appellate district and passed upon by our own court of appeals, and naturally this court would feel inclined to, and should, follow such decisions if no other question was involved in the case at bar than in the cases referred to.
Considering G-. C. of Ohio, Sections 4692, 7669 (107 O. L., 624), 4682-1, 4726, 4726-1, as well as those hereinbefore referred to, all ,of which were passed by the Legislature for a purpose and all of which appear to seek to protect the rights and wishes of the electors of the territory to be effected, with what I have said as to my views as to a construction of G-. C., Sec: 4736, I would be compelled to respectfully differ from our appellate court in its apparent conclusion that county boards are given such unlimited and arbitrary power by the last mentioned section.
It is not necessary for a decision of this case that this court should attempt to construe or apply the statutory enactments above referred to, aside from what has been said of G-. C., 4736.
Considering the cases mentioned, the court is of the opinion that Judge Donahue’s opinion in the Cline-Martin case (94 O. S.), does not pass upon, unless obliter dicta, nor determine nor attempt to determine the questions presented in the case at bar and that it is inapplicable.
*216 Coming to the Fisher-Whittns case (27 O. C. A., 349). This was a case brought by an individual elector and taxpayer, and father of children of school age who resided with him, to enjoin the consummation of acts of the county board in creating a new school district, and the issuance and sale of bonds, the purchase of a site, and the erection of a building, for a consolidated district.
The facts are very meagerly set forth in the opinion so that it is impossible for this court to determine whether the case is in any sense parallel with the case at bar. From what appears, this court doubts that they are parallel.
The syllabus — which is supposed to be the law of the case, and approved by the court — reads:
“A county board of education has authority to dissolve two village school districts and consolidate them into one, in the absence of procedure on the part of said districts under Sections 4688 and 4688-1 which would exempt them from such action. ’ ’
Neither the syllabus nor the opinion states the section of the statutes under which the county board acted for the consolidation.
Incidentally, in the opinion, the court refers to G. C. of Ohio, Sections 4736, and its language in reference to the power to “create a school district,” and then states generally the court’s conclusion that “the county board has full power and authority over village districts and may create a new district by consolidating two village districts, unless, etc.,” but the opinion does not disclose, nor the court say, upon what possible primary action, under other permissive statutes, such power is based, nor does it definitely say that it is based alone on G. C., Section 4736.
The general purpose of the school code was to systematize courses of study, and re-arrange districts if need be to facilitate attendance of pupils, in order to advance education in the rural and village districts, and county boards were created as supervising bodies for such purposes; and not to vest in them arbitrary power to remove school officials who had .been .elected by the people, and make property subject to additional burden of taxation, without regard to the people’s wishes, on the mere opinion or whims of such boards, or their superintendent.
*217 I am inclined to think that our court of appeals in the Fisher case looked at this matter from an entirely different viewpoint, based upon other facts and conditions, and perhaps other authorities not cited in their opinion, and that they did not intend to attempt to definitely construe G. C., 4736, as would appear and as is urged by counsel for defendants herein.
Even if their court misconstrues the appellate court’s intention in such case, it clearly appears that the actor therein was an individual and not the duly elected school officers of one of the districts, and that there was no remonstrance filed, as in the ease at bar, of a majority of the electors and taxpayers of one or both districts
Passing now to the question of remonstrance, and counter-petitions and the case of Montgomery Twp. Bd. of Ed. v. County Board (28 O. C. A., 198), without attempting to rehearse such decision, the court is of the opinion the case would not be applied to the state of facts herein.
Our own appellate court in the ease of Cline v. Martin et al, 24 O. C. C. (N. S)., 81, in the 1st syl. say:
“A court will not grant relief to a complaining taxpayer (against Bd. of Ed.) in the absence of a showing of fraud or an intentional abuse of discretion.”
The converse of this proposition should be true, and without rehearsing the acts of the county board and county superintendent in the case at bar, but referring parties again thereto, this court is of the opinion that our appellate court meant the converse to apply to the state of facts here presented.
Referring again to G. C., 4736, and particularly to the remonstrance provision and its effect, this court is of the opinion that whenever within thirty days after the filing of the notice a majority of the electors file 'a written remonstrance, then the proposed arrangement or creation of the new district does not become effective.
It is contended by defendants’ counsel that after the remonstrance is filed, signers thereto can withdraw their names and thereby a new district becomes effective as though no remonstrance had been filed. It is true that the courts of this state have held that signers to certain classes of petitions may withdraw their names at any time before action is taken thereon. *218 This upon the theory that the petitions confer jurisdiction upon the acting ¡body to do the thing petitioned for, and to confer such jurisdiction the required number of signers must appear upon the petition at the time the action is taken, otherwise there would not be enough signers to confer jurisdiction. This is the reasoning of the court in the case of Hays v. Jones, 27 O. S., p. 218, and dwelt upon by the .court is the opinion on page ,230, where we find the following language:
“The statute does not confer jurisdiction upon the commissioners. It designates them as the body upon which jurisdiction may be conferred; describes the persons and number who can confer it; the manner in which they may bestow it; and the time at which the jurisdictional facts are to be ascertained by the commissioners. If this fact is clearly determined in the affirmative and they order the road to be constructed, all things necessary towards the completion of the work may be done by the proper public agents to levy and collect from the minority as well as from the majority, the necessary amount of money for the improvement.”
Other Ohio authorities, especially those in local option election cases, are along the same lines. In the case of Grimmell v. Adams, 34 O. S., p. 44, it is held:
“After the jurisdiction of county commissioners, in the mat' ter of laying out or altering a county road, has attached by the filing of a proper petition, etc., such jurisdiction can not be defeated by any number of the petitioners afterward becoming remonstrants against the granting of the prayer of the petition. ’ ’
The converse of the above should also be true — that jurisdiction is lost by the filing of remonstrance, and such jurisdiction once lost can not be restored by withdrawals of name of remonstrants.
See also case of State v. Miller, 62 O. S., p. 436, wherein it is held a member of council can not change his vote after the election of the clerk of council voted for.
The Attorney-General in an opinion held that remonstrants could withdraw their names. While such opinion has not the weight of a decision, it is entitled to consideration, but an examination of his opinion discloses that he relied upon the authorities permitting a petitioner to withdraw his name and *219 failed.to distinguish between a petition conferring jurisdiction and a remonstrance defeating jurisdiction.
In the opinion of the court there is a difference between a case where jurisdiction is conferred by a petition and one where it is destroyed by a remonstrance, in this, that to confer jurisdiction the required number of signers must appear at the time action is to be taken thereon, but in the case of a remonstrance, wherein no further action is to be taken by the acting body, all that which preceded it becomes of no effect immediately upon the filing of the remonstrance, and all jurisdiction is thereby lost and can not be re-conferred by the withdrawal of some of the remonstrants; for in the ease of petitions jurisdiction is conferred by the petition, while in the last mentioned line of cases jurisdiction is conferred by the statute and taken away by filing a remonstrance. See State v. Trenton, 36 Atlantic, 685, Armstrong v. Ogden City, 43 Pacific, 119.
The ease of Brodhead v. Flemington, 88 Atlantic Reports, p. 826, is directly in point with the question at bar. Therein it was held that the filing of a remonstrance at any time within the period fixed by law terminated all authority in the matter and the withdrawal of names from the' remonstrance does not re-eonfer authority.
In the opinion, the court on page 827 say that cases in which, owing to the legislative language, the application or remonstrance must speak as of the time when it is officially presented to the governing body and cognizance taken of it, have obviously no application to the present case, where the Legislature has itself prescribed the critical event to be not the taking of cognizance by the governing body, but the filing of the required remonstrance with a specified official.
This, it would appear to the court, is the language and meaning of Section 4736. The critical event under that section is not the taking of cognizance of the remonstrance by the county board, but the filing of the required number with the county board. The proposed re-arrangement of a school district becomes of no effect as soon as the required number have signed a remonstrance and filed it at any time within said thirty days. This may be on the first day or the last day, and when once filed the arrangement becomes ineffective and to withdraw some *220 or all of the names on the remonstrance does not make the’ proposed arrangement effective for that would be re-creating a jurisdiction which had been lost or creating a jurisdiction which is only given by the statute.
In the state of Missouri we find two apparently contrary opinions on the right to withdraw from a remonstrance.
The first case is that of Sedalia v. Scott, 78 S. W., 276, by the Court of Appeals of Kansas City wherein it was held that jurisdiction was ousted by the filing of a remonstrance signed by the majority of property owners and the same can not be reconferred by a portion of the signers thereafter withdrawing from the protest. The other case is that of Sedalia v. Montgomery, 88 S. W., 1014, by the Court of Appeals of St. Louis, and as this brought about conflicting opinions the last case went to the Supreme Court of Missouri, and is found in 127 S. W., page 50.
The Supreme Court of Missouri in commenting on these two eases found it necessary to construe the statute and to determine whether the statute conferred the jurisdiction in the first instance or conferred it only conditionally, and in construing the statute and commenting on the two opposite opinions the court say:
“If the statute confers on the city council, in the first place, the complete jurisdiction to canse the street to be reconstructed at the expense of the owners of abutting property, but authorizes a majority of the. property owners to annul that authority in a given case, by filing their remonstrance, then when the remonstrance is filed the jurisdiction in that case is annuled, and the remonstrators can not by withdrawing the remonstrance re-eonfer the jurisdiction.
“But, on the other hand, if the statute does not confer on the city council, in the first instance complete jurisdiction, but confers it only conditionally — that is, confers the right to propose by an appropriate resolution to do the act, subject to’ the will of the majority abutting property owners, such will to be expressed within a given period, then the jurisdiction over the subject matter is in abeyance until that period has elapsed.”
That court holding that under Said statute the power on the part of the city council to do the act proposed is not conferred until the lapse of the period within which remonstrance may be filed, and in construing said statute says further:
*221 ‘ ‘ In other words, the statute in effect says to the city council; You may make the improvement suggested by the resolution, provided a majority of the abutting property owners are willing, and you may have ten days in which to ascertain that fact, and if at the end of that period there is not before you a remonstrance signed by a majority of the property owners you may infer that it meets their approval, and then, hut not until then, your jurisdiction attaches. During that period, therefore, there is no power or jurisdiction either to annul or to be re-created. ’ ’
A careful reading of the Missouri opinion to the court’s mind supports the position that where the statute confers jurisdiction the remonstrance annuls the jurisdiction and can not be reconferred by having signers withdraw therefrom, but only in cases where power to do the act proposed is not conferred until the lapse of time within which remonstrance may be filed can there be withdrawals therefrom, and this upon the theory (similar to cases of petition) that jurisdiction is to be determined by the conditions at the time the same is about to be exercised.
The Missouri section under consideration, which is as follows:
“And if a majority of the resident owners of the property liable to taxation therefor shall not within thirty days thereafter file with the clerk their protest against such improvement then the council shall have power to cause such improvement to be made,”
is very different from Section 4736 under which the county board does nothing but propose an arrangement with nothing to do thereafter. No action whatever either upon the remonstrance or otherwise, is to be taken by the county board after they have passed a resolution and given notice to the local boards of education. When they adopt this resolution and give the notice their power and jurisdiction is exhausted and the filing of a remonstrance at any time within the thirty days annuls the resolution and no withdrawals can restore it.
In case of Loomis v. Bailey, 45 Iowa Supreme Court, 400, on the subject of re-location of a county seat, it was held that the board of supervisors are not authorized, if a petition and remonstrance have been presented to them respecting a change in the location of a county seat, to consider an application by any *222 number of signers that their names be stricken from the remonstrance.
In the last mentioned case the court criticises the practice where men are solicited to withdraw their names from a remonstrance, thus compelling other remonstrants to be obtained and thereby causing bitterness in a community, and they speak of the mischief that can arise from permitting withdrawals; that the peace of communities and the good of the people forbid such methods of causing bitterness and opportunities for unfairness to be introduced.
And in the case of Brewery Co. v. Jersey City, 42 N. J. Law, 575 the court, on page 577, in speaking on the same subject says: That it 'may be that others who decide to object refrain from doing so upon ascertaining that a sufficient remonstrance was already filed, and intimate that the proper method is not to permit withdrawals, but to institute new proceedings and give the required notice to the public, de novo.
It seems to this court that G-. C., Section 4736, should not be construed in such a way that trickery must be resorted to in order to obtain benefits or rights thereunder, but should recognize the right of a remonstrance filed in good faith, and cause remonstrators to feel that they will receive a square deal when their remonstrance is filed. If a remonstrance speaks only from the last day of the .thirty, then a remonstrance must be held off the files until two or five minutes before the expiration of the last day so as to prevent any withdrawal. Surely the law should not be so construed, but should be construed to mean what it says, so as to permit people to file their remonstrances at any time, and to know that when they have filed it they may go to their homes feeling secure that their rights have been preserved. It may often happen that more than the fifty per cent, are opposed to a new arrangement of school districts, but it is not necessary that more than that number sign a remonstrance, for as stated by the New Jersey Supreme Court, some who are opposed refrain from signing and do not take the time to object when they ascertain that a sufficient remonstrance was already signed.
The thirty day period fixed in Section -4736 is not, strictly speaking, a referendum. For a referendum is a method of *223 submitting a legislative or other measure to a direct vote of the whole people, and in such cases the whole people are asked to give their expression at a certain time. If this had been submitted to the whole people at a certain time and fifty per cent, had voted against it, could it be said that any part thereof might change their vote so as to change the result ? This could not be done unless the question be re-submitted to the whole people at another time.
Under 4736 the county board has nothing more to do after passing the resolution and giving the notice. While it is authorized to appoint a board of education for a newly created school district, it requires no action on their part on the filing of the remonstrance; for such authority to appoint a board of education is also conferred upon the county commissioners under 4736-1.
Referring again to the Ashland County case, the court, in the syllabus, say: ’
“Electors signing a remonstrance against the re-a/rrangement of the school districts are at liberty to withdraw their names at any time within the thirty days, or until official or judicial action has been taken.”
This latter, underscored, portion might indicate that the names could be withdrawn after the thirty day period.
If so, such holding would be. in direct conflict with opinion of Henry County Court of Appeals decision in the case of Hartman v. Darby et al (unreported), in which it was held that the withdrawal of names from a remonstrance after the period of thirty days time prescribed in G. C., 4692, is of no effect; and further held that no authority is by statute conferred upon the county board to determine the validity of a remonstrance.
Counsel for defendants, herein, called to the court’s attention an appellate court decision in Crawford county — Lyons v. Jenner et al (unreported) — in which the Supreme Court overruled a motion to-certify record, and in which the appellate court stated the holding was that signers of a remonstrance might withdraw their names, but as this court has no information as to the conditions and facts upon which that decision was rendered it is compelled to entirely disregard it.
*224 It was suggested by counsel for defendants that the county board took tlie action they did, on account of some letter from stale authority stating that unless a new high school building was erected in the village of Chesterville and new equipment provided, that its second grade high school would have to be discontinued; and that for such reason, to increase the tax duplicate and to enable the accomplishment of such requirement such action was taken for the benefit of pupils in the village and township who desired to attend a high school.
The desire to provide such building and equipment was natural; the purpose was commendable; but the method of accomplishment, or seeking to attain it, is to be condemned.
From all the evidence submitted, and the statutes and decisions called to my attention and examined, I am of the opinion that G-. C. of Ohio, Section 4736, does not confer on the county board the authority sought to be exercised by it — to abolish two entire school districts and oust from office their boards and to create a new and distinct district by uniting all of such territory, and appoint a new board therefor; and that even if such authority was given by the statute, that the filing of a remonstrance by electors revoked the board’s proposed action; that because of the methods adopted by the county board and superintendents in securing petitions to withdraw names— which was in the nature of a fraud and abuse of the purpose and statutory intendment — such so-called petitions should be disregarded by a court of equity, and the remonstrances as originally signed and filed should be considered as meeting the requirement of the statute to. dissolve or rescind the attempted action of the county board.
Therefore the finding on the issues joined is in .favor of plaintiffs, and the injunction is allowed and made perpetual, both restraining and mandatory, fully as prayed for in plaintiff’s petition. Costs assessed against defendant, the county board of education. Entry may be prepared accordingly and exceptions noted. Amount of appeal bond $500.